[No. 21327-3-II. Division Two. August 14, 1998.]

THE STATE OF WASHINGTON, *Respondent*, v. RODNEY B. SIMONSON, *Appellant*.

*Rodney B. Simonson*, pro se.

*Christopher W. Bawn*, for appellant (appointed counsel for appeal).

*Bernardean Broadous, Prosecuting Attorney*, and *Robert A. Lund, Deputy*, for respondent.

MORGAN, J. — Rodney Simonson appeals convictions for one count of manufacturing methamphetamine while armed with a deadly weapon and six counts of illegally possessing a firearm. We affirm the convictions but remand for resentencing.

In November 1995, Simonson and Susan Robinson were living in a silver Airstream trailer (hereafter, the silver trailer). Simonson had a felony record.

The silver trailer was located on property Simonson and Robinson had rented. The trailer was 30 feet long, with

black plastic and masking tape covering the windows. It had a living area in front, a kitchen behind, and a small bedroom and bathroom separated from the rest by an accordion door. The record does not show the dimensions of the various rooms.

In February 1996, a green travel trailer (hereafter, the green trailer) appeared on the property Simonson and Robinson had rented, and Simonson or Robinson began paying the landlord an extra $30 per month in rent. The windows of the green trailer were painted black.

On March 11, 1996, Simonson was stopped for a traffic infraction and falsely identified himself as Rodger Jones. He was arrested and jailed on charges not related to those here.

On March 14, 1996, while Simonson was still in jail, the green trailer exploded. The first person to arrive at the scene saw Robinson emerge from the silver trailer, badly burned.

A few minutes later, emergency personnel found a loaded Lorcin 9 mm automatic handgun in the mud outside the green trailer. According to the police, the gun had "just been recently dropped," because it did not have rust or dew on it.[1]

The police retrieved fluids from the green trailer that tested positive for methamphetamine. They also found solvents, waste materials, and other residual chemicals related to the manufacture of methamphetamine. They concluded that the green trailer had been used as a meth lab for some time.

Based on their investigation of the green trailer, the police obtained a search warrant for the silver trailer. When they executed that warrant, they found six guns in the bedroom area, including a loaded Smith and Wesson .357 revolver, a loaded Lorcin 9 mm semiautomatic pistol, and an unloaded Walther semiautomatic pistol, all in a cupboard above the bed; a loaded Coast-to-Coast 12-gauge pump

---

[1]Report of Proceedings at 56, 241.

shotgun behind a table opposite the bed; a Remington 12-gauge pump shotgun behind a television; and a Ruger .223 assault rifle behind a table.[2] The police also found many of Simonson's personal effects, including men's clothing, a man's wallet with items containing his name, a photo album with pictures of him, and a grey nylon bag containing documents in his name.

Additionally, the police found evidence that someone had been extracting pseudoephedrine in the bedroom area. The evidence included a sealed box containing 10,000 pseudoephedrine pills, addressed to Rodger Jones. The manufacturer had shipped 10,000 pills to Susan Robinson on February 7, 1996; another 10,000 to "Susie Simonson" on February 29, 1996; and another 10,000 to Rodger Jones on March 6, 1996. Testimony given at trial showed that extracting pseudoephedrine from cold or allergy tablets is often a step in the manufacture of methamphetamine.

On March 29, the State charged Simonson with unlawful manufacture of a controlled substance. It later amended the charge to allege one count of unlawful manufacture of a controlled substance (methamphetamine) while armed with a deadly weapon, and six counts of unlawful possession of a firearm in the first degree.[3]

Before trial, while in jail, Simonson made a number of statements to another inmate named Dana Rice. Simonson said he had been "cooking" methamphetamine in the green trailer, and drying it in the silver trailer. He said that if he had been arrested a day earlier, he would have been caught with a pound of the drug. He said "that his girlfriend . . . Susan Robinson . . . was going to take the blame for the trailers or for the whole operation because she didn't have

---

[2]The record is not clear on whether the Remington and Ruger were loaded when found. The rifle and both shotguns were rusty. None of the guns was registered, or listed as stolen.

[3]The State also charged possession of marijuana, but the jury found Simonson not guilty on that charge.

a criminal record."[4] Similarly, he "mention[ed] the guns that were in his trailer," and "that he was going to have Susan take the rap for the guns, because he didn't want to get Felon in Possession of a Firearm."[5]

Also before trial, the jail intercepted a letter written by Robinson to Simonson. In the letter, Robinson states that she loves Simonson, and that she will "definitely let them know . . . that everything was all *mine*, even all *my* guns, because I can't even believe that they would try to blame you for my mistake."[6]

Trial commenced on July 15, 1996. Witnesses included Michael Hewson and Simonson. Susan Robinson did not testify, after claiming her right against self-incrimination out of the presence of the jury.

Hewson testified that Simonson had told him that Simonson had been making methamphetamine for 15 to 20 years. During February and March 1996, Hewson had been to the trailers and had seen Simonson manufacturing methamphetamine.

On direct, Simonson denied manufacturing or assisting in the manufacture of methamphetamine. He also said that he had not been aware of anyone manufacturing it in the trailers. He said that he and Robinson had split up following an argument on February 14, and that he had not lived at the property after that. When he did live there, he said, he did not allow guns on the premises, because he was an ex-felon.

On cross, the prosecutor asked whether Robinson, in her letter, had underlined "my guns" as if "to tell you, wink-wink, the fix is on?"[7] Defense counsel objected, and the trial court sustained. The prosecutor then asked, "What I'm asking you is the reason that's in there is because you

---

[4]Report of Proceedings at 331.

[5]*Id.*

[6]*Id.* at 505.

[7]*Id.*

had made the arrangement to do this?"[8] The defense did not object, and Simonson answered "[n]o." A moment later, the prosecutor asked, "Susan hasn't come here and told the jury that those are her guns, has she?"[9] Again the defense counsel did not object, and again Simonson answered "[n]o."

At the end of the evidence, the court instructed that the jury could convict Simonson only if it found beyond a reasonable doubt that Simonson or an accomplice had knowingly manufactured methamphetamine between February 1 and March 15, 1996. The court instructed that before the jury could return a deadly weapon special finding, it had to be satisfied, unanimously and beyond a reasonable doubt, that Simonson had been armed with a deadly weapon at the time of the manufacturing. The court did not instruct, nor was it asked to instruct, that the jury had to unanimously agree on the particular firearm with which Simonson had been armed.

The jury found Simonson guilty of unlawful manufacture of a controlled substance and six counts of first degree unlawful possession of a firearm. It also found, by special verdict, that he had been armed with a deadly weapon at the time of the unlawful manufacture. At sentencing, the trial court counted each firearm-possession charge as a separate offense. The result was an offender score of 12, a standard range of 108-120 months on the manufacturing charge, and a standard range of 87-116 months on each possession-of-firearm charge. The court imposed sentences of 120 months on the manufacturing count and 116 months on each of the six other counts, all sentences to run concurrently.

On appeal, Simonson claims that the evidence is insufficient to support the six verdicts finding him guilty of possessing firearms. Although he does not claim that the evidence is insufficient to support the verdict of manufac-

[8]*Id.* at 506.

[9]*Id.* at 507.

turing, he does claim that the evidence is insufficient to support the special verdict that he was armed with a deadly weapon. He also claims that the trial court miscalculated his offender score; that the prosecutor engaged in misconduct; and that the police unlawfully searched the sealed box of ephedrine pills that was found in the silver trailer.

I.

██ ██ Simonson argues that the evidence is insufficient to support findings that he constructively possessed each of the charged guns. Evidence is sufficient if, when viewed in the light most favorable to the State, it is such that a rational trier of fact could find beyond a reasonable doubt each element of the crime charged.[10] A person "is guilty of the crime of unlawful possession of a firearm in the first degree, if the person owns, has in his or her possession, or has in his or her control any firearm after having previously been convicted in this state or elsewhere of any serious offense as defined in this chapter."[11] Unlawful possession may be actual or constructive,[12] and a person is in constructive possession "when there is no actual physical possession but there is dominion and control over the item, and such dominion and control may be immediately exercised."[13]

Here, Simonson was charged with possessing the guns from February 1 to March 15, 1996. It is undisputed that he lived in the silver trailer for part of that time. His belongings were still there when the warrant was executed. He implied to Rice that the guns were his, and Robinson implied the same in her letter to him. Based on these and

---

[10]*State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

[11]RCW 9.41.040(1)(a).

[12]*State v. Staley*, 123 Wn.2d 794, 798, 872 P.2d 502 (1994).

[13]11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS 133.52 (2d ed. 1994); *Staley*, 123 Wn.2d at 798; *State v. Roberts*, 80 Wn. App. 342, 353, 908 P.2d 892 (1996).

other facts in the record, a rational trier could reasonably find, beyond a reasonable doubt, that Simonson constructively possessed the guns.

## II.

Simonson argues that the trial court erred by imposing the deadly weapon enhancement under RCW 9.94A.125. That statute provides in part, "In a criminal case wherein there has been a special allegation and evidence establishing that the accused or an accomplice was armed with a deadly weapon at the time of the commission of the crime, . . . the jury shall, if it find[s] the defendant guilty, also find a special verdict as to whether or not the defendant or an accomplice was armed with a deadly weapon at the time of the commission of the crime." Simonson contends these provisions were not met (A) because the evidence is insufficient to show that he was "armed with a deadly weapon at the time of the commission of the crime," and (B) because the trial court did not give a unanimity instruction.

## A.

 A defendant or an accomplice is "armed with a deadly weapon at the time of the commission of the crime" if he, she, or another participant in the crime causes a deadly weapon to be "readily available for use," either offensively or defensively, during the commission of the crime.[14] A defendant or an accomplice is not so armed, however, merely because he or she is in constructive possession of the weapon,[15] or in close proximity to the

---

[14]*State v. Valdobinos*, 122 Wn.2d 270, 282, 858 P.2d 199 (1993); *State v. Williams*, 85 Wn. App. 508, 514, 933 P.2d 1072 (1997), *rev'd on other grounds*, 135 Wn.2d 365 (1998); *State v. Call*, 75 Wn. App. 866, 869, 880 P.2d 571 (1994); *State v. Sabala*, 44 Wn. App. 444, 448, 723 P.2d 5 (1986).

[15]*State v. Mills*, 80 Wn. App. 231, 235-36, 907 P.2d 316 (1995); *Call*, 75 Wn. App. at 868-69.

weapon.[16] A gun is a deadly weapon even if not loaded,[17] although its loaded or unloaded condition is one of many factors to consider when deciding whether the defendant or another participant in the crime caused the gun to be "readily available for use" during the commission of the crime.[18]

■ Taken in the light most favorable to the State, the evidence here shows that Simonson and Robinson were committing a continuing offense, manufacturing methamphetamine, over a six-week period of time. During some or all of that time, they kept seven guns on the premises. It is reasonable to infer that not less than four were kept in a loaded condition, for it is obvious that Robinson did not load them after being burned in the explosion. It is also reasonable to infer that the purpose of so many loaded guns was to defend the manufacturing site in case it was attacked. We conclude that the evidence is sufficient to support the deadly weapon enhancement.

## B.

■ A unanimity instruction is required, whether requested or not, when a jury could find from the evidence that the defendant committed a single charged offense on two or more distinct occasions.[19] If the instructions read as a whole permit some jurors to find that the defendant committed the offense on one occasion, and other jurors to find that the defendant committed the offense on a different occasion, the instructions do not require a unanimous verdict, and they violate the right to a unanimous jury. A jury cannot find that the defendant committed a single charged offense on two or more occasions, however, if the evidence

---

[16]*Valdobinos*, 122 Wn.2d at 282; *Call*, 75 Wn. App. at 868-69.

[17]RCW 9.94A.125; *State v. Taylor*, 74 Wn. App. 111, 125, 872 P.2d 53, *review denied*, 124 Wn.2d 1029 (1994); RCW 9.04.110(6).

[18]*See Williams* at 514 (easily accessible gun with "ammunition in its chamber").

[19]*State v. Petrich*, 101 Wn.2d 566, 570, 683 P.2d 173 (1984).

shows only that the defendant committed a single *continuing* offense.[20]

A unanimity instruction is not required merely because a jury could find from the evidence that the defendant committed the charged offense by more than one of several alternative means.[21] If each juror finds that the defendant committed the crime by any one of such means, each juror finds that the defendant committed the crime, and the jury verdict is unanimous.

■ ■ The evidence here shows two propositions: first, that Simonson and Robinson committed a single continuing offense, manufacturing, between February 1 and March 14; and second, that Simonson committed the offense either by manufacturing it himself, or by aiding and abetting Robinson's manufacture of it. The first proposition does not warrant a unanimity instruction, because there is no danger that some jurors would have found the occurrence of one crime while other jurors found the occurrence of a different crime. The second proposition does not warrant a unanimity instruction because, even if some jurors found that Robinson was a principal while others found he was an accomplice, all necessarily found that he committed the same crime. We conclude that a unanimity instruction was not required.

III.

Simonson argues that the trial court should have counted his six possession-of-firearm convictions as "same criminal conduct," thus giving him a lower offender score at sentencing. Preliminarily, the State based each of the six

---

[20]*State v. Elliott*, 114 Wn.2d 6, 13-15, 785 P.2d 440, *cert. denied*, 498 U.S. 838 (1990); *State v. Love*, 80 Wn. App. 357, 361, 908 P.2d 395, *review denied*, 129 Wn.2d 1016 (1996); *State v. Gooden*, 51 Wn. App. 615, 619-20, 754 P.2d 1000, *review denied*, 111 Wn.2d 1012 (1988).

[21]*State v. Kitchen*, 110 Wn.2d 403, 410, 756 P.2d 105 (1988); *State v. Arndt*, 87 Wn.2d 374, 377, 553 P.2d 1328 (1976); *State v. Taylor*, 90 Wn. App. 312, 317, 950 P.2d 526 (1998). In stating this proposition, we assume that each alternative means is supported by sufficient evidence. *See Kitchen*, 110 Wn.2d at 410.

firearm counts on RCW 9.41.040. That statute was amended by the "Hard Time for Armed Crime" initiative, which passed in 1995. As amended, it provides in part that "[e]ach firearm unlawfully possessed under this section shall be a separate offense."[22] Accordingly, the State was authorized to *charge* one count for each firearm. Charging, however, is different from sentencing.

■■ Sentencing is controlled by RCW 9.94A.400, which was not amended by the "Hard Time for Armed Crime" initiative.[23] Insofar as pertinent here, RCW 9.94A.400 provides "[t]hat if the court enters a finding that some or all of the current offenses encompass the same criminal conduct then those current offenses shall be counted as one crime."[24] It further provides that " 'same criminal conduct' . . . means two or more crimes that [1] require the same criminal intent, [2] are committed at the same time and place, and [3] involve the same victim."[25] The absence of any one of these criteria prevents a finding of "same criminal conduct."[26]

All three of the required criteria are present here. Each of the six firearm counts involved the same criminal intent. Each of the six involved a gun possessed and found at the same time and place. Each of the six involved the public at large as victim.[27] We conclude that the six counts constituted the same criminal conduct; that Simonson's offender

---

[22]RCW 9.41.040(7).

[23]*In re Post Sentencing Review of Charles*, 135 Wn.2d 239, 245, 955 P.2d 798 (1998). RCW 9.94A.400(1) was amended in 1998, but that amendment does not apply to the events here, which took place in 1996.

[24]RCW 9.94A.400(1)(a).

[25]*Id.*

[26]*Williams*, 85 Wn. App. at 511 (citing *State v. Lessley*, 118 Wn.2d 773, 778, 827 P.2d 996 (1992)); *State v. Rodriguez*, 61 Wn. App. 812, 812 P.2d 868, *review denied*, 118 Wn.2d 1006 (1991).

[27]*See Williams*, 135 Wn.2d at 367; *State v. Porter*, 133 Wn.2d 177, 181, 942 P.2d 974 (1997).

score was erroneously computed; and that resentencing is required.

## IV.

Simonson argues that the prosecutor engaged in misconduct "by making a taunting observation that 'the fix is on,' "[28] and by asking, "Susan hasn't come here and told the jury that those are her guns, has she?"[29] The reference to a "fix" came as the prosecutor was quoting from Robinson's letter to Simonson.

Assuming without holding that both questions were improper, neither could possibly have affected the outcome of the trial. Simonson and Robinson's relationship was a key feature of the evidence already before the jury, Robinson's letter to Simonson was admitted without objection, and it was obvious to all, including the jury, that Robinson was not appearing as a witness.[30] Moreover, defense counsel objected to only one of the prosecutor's questions, and he did not request a curative instruction with regard to any of them. Error, if any, was harmless, waived, or both.

## V.

In his pro se brief, Simonson argues that the sealed box containing 10,000 pseudoephedrine pills, found during the search of the Airstream trailer, was illegally searched. This argument fails because a search warrant for a house

---

[28]Br. of Appellant at 22.

[29]Report of Proceedings at 507.

[30]If Simonson is arguing that the prosecutor's questions told the jury that Robinson was claiming her Fifth Amendment right against self-incrimination, we cannot agree. Without more, the questions did not imply the reason Robinson would not testify, and Robinson claimed her Fifth Amendment right outside the presence of the jury.

authorizes a search of containers in the house that could hold one or more of the items specified in the warrant.[31]

The other arguments in Simonson's pro se brief are obviously without merit or duplicate points made by his attorney.

The convictions are affirmed. The sentences are vacated, and the case is remanded for resentencing.

HOUGHTON, C.J., and ARMSTRONG, J., concur.

Review denied at 137 Wn.2d 1016 (1999).

---

[31]*See State v. Lee*, 68 Wn. App. 253, 257, 842 P.2d 515 (1992), *rev'd on other grounds sub nom. State v. Hill*, 123 Wn.2d 641, 870 P.2d 313 (1994); WAYNE R. LAFAVE, SEARCH AND SEIZURE § 10(d), at 670 (3d ed. 1996).