[No. 41727-4-I.   Division One.   December 27, 1999.]

THE STATE OF WASHINGTON, *Respondent,* v. CHAD EDWARD SMITH, *Appellant.*

*Thomas M. Kummerow* of *Washington Appellate Project,* for appellant.

*Gregory Marshall Banks, Prosecuting Attorney,* for respondent.

AGID, J. — After Chad Smith gave several of the seven

guns he stole from his stepfather's gun cabinet to Thoren Honeycutt, and Honeycutt failed to share the proceeds he received from trading the guns, Smith confronted Honeycutt in his apartment with a loaded gun which went off, injuring Honeycutt in the arm. Smith appeals his conviction for second degree attempted murder and first degree assault, contending that insufficient evidence supports his conviction and that the trial court erred in failing to calculate his seven counts of firearm theft as the same criminal conduct for sentencing purposes. In a pro se brief, Smith alleges that the trial court abused its discretion by denying his trial counsel's motion to withdraw and by directing the jury to redeliberate after polling revealed that one juror's individual verdict did not comport with the jury verdict, and after the jury had seen Smith in physical restraints. We affirm the convictions, but vacate the sentence and remand for resentencing.

## FACTS

On April 20, 1997, Chad Smith called his stepfather, Randy Corderman, to report that a gun safe containing seven guns that Corderman kept in Smith's closet was missing. Smith called the Island County Sheriff's Department and Deputy C.E. Wallace investigated the theft. Wallace noted that the closet area was in disarray, a chair was overturned, and the bedroom carpet was covered with sheetrock dust. The carpet in the rest of the house, however, had been recently vacuumed. Wallace also discovered that although the screen had been removed from a bedroom window, the outside sill was covered with pollen and dirt and had not been disturbed. He found no other signs of forced entry.

Ten days later, Smith went to Shon Tucker's house, where several people, including Roger Coleman, were hanging out and taking drugs. According to Coleman, Smith appeared angry about something and said he had been "ripped off." Coleman heard Tucker ask Smith whether he "want[ed] it," and Smith replied that he did. Tucker

brought out a shotgun with silver tape wrapped around the grip, handed it to Smith, and they discussed ammunition for it. About 45 minutes later, Coleman left Tucker's house to give a friend a ride. Smith came out and asked if he could get a ride as well. Coleman eventually said yes, but told Smith that he could not bring the gun. Smith went back into Tucker's house and returned wearing a flannel shirt which Coleman believed concealed the gun. Coleman let him into the car.

Smith asked Coleman to drop him off at an apartment complex near Oak Harbor and pick him up after he had dropped off the other person in the car. When Coleman returned to the complex, he found Smith and Mason Mitchell sitting in the living room of an apartment belonging to Thoren Honeycutt, a methamphetamine dealer Smith had known for approximately a year. Smith appeared agitated and held the shotgun in his hand. When Honeycutt yelled out to Coleman for a cigarette, both Coleman and Smith went into his bedroom where he was lying down with his head propped up on a pillow.[1] As Coleman attempted to light Honeycutt's cigarette, Smith "jumped on the end of the bed and was standing up over" Honeycutt. Smith alternately pointed the weapon at Honeycutt and jabbed his head and arms with it, while "cussing and telling him that he can't rip him off, telling him that—that he's not somebody to play with." Smith asked Honeycutt if he thought Smith was "playing with" him, and Honeycutt, who was feeling "cocky," responded that he did, and attempted to block another blow from the gun with his arm. At that point, "the gun went off," striking Honeycutt in the right forearm. Smith told Mitchell not to call the police, and he and Coleman left the apartment.

Smith was arrested on May 3, 1997, and charged with one count of attempted murder in the first degree and one count of assault in the first degree, both while armed with a deadly weapon, one count of unlawful possession of a

---

[1] Honeycutt testified that he was sleeping when Smith entered his bedroom alone.

firearm in the second degree, one count of possession of an unlawful firearm, and seven counts of theft of a firearm. At trial, Honeycutt testified that on April 20, he and Smith were at Smith's house using drugs when Smith told Honeycutt to wait outside. Smith emerged moments later dragging Corderman's gun cabinet, which they loaded into Smith's girl friend's car and dropped off at a dump after removing the seven guns inside. Smith gave Honeycutt a 16-gauge shotgun for helping him, which Honeycutt gave to Tucker. Honeycutt admitted that, over the next week, he "scammed [Smith] out of a couple of guns." When Smith confronted Honeycutt about the drugs he was to give Smith in exchange for the guns, Honeycutt said he had nothing to give him. The State argued at trial that this dispute led to the shooting.

The jury found Smith guilty on all counts except that, on the attempted murder in the first degree charge, it convicted him of attempted second degree murder. Smith came to the courtroom for the verdict wearing physical restraints. The first juror polled expressed confusion about whether this was her individual verdict, so the trial court directed the jury to continue its deliberations. It returned 20 minutes later and delivered the same verdict. This appeal followed.

## DISCUSSION

Same Criminal Conduct

When the Legislature enacted RCW 9A.56.300 in 1995 as part of the "Hard Time for Armed Crime" Initiative Measure 159, it created the crime of Possessing a Stolen Firearm[2] and amended RCW 9A.56.300(3), the Theft of a Firearm statute at issue here. Included in both offenses is a section directing that each firearm stolen or possessed is a "separate offense." Because Smith stole seven firearms when he took his stepfather's gun cabinet, the State charged Smith with seven counts of firearm theft under RCW 9A.56.300(3).

---

[2] See RCW 9A.56.310.

At his sentencing hearing, however, Smith argued that they should be counted as one offense for sentencing purposes because they are the same criminal conduct under RCW 9.94A.400(1)(a).[3] This "same criminal conduct" provision, contained in the Sentencing Reform Act of 1981 (SRA), directs that when a person is to be sentenced for two or more current offenses, the sentence range for each current offense is determined by using all other current and prior convictions as if they were prior convictions for the purpose of the offender score. But if the court enters a finding that some or all of the current offenses encompass the same criminal conduct, those current offenses are counted as one crime.[4] The trial court declined to do that here reasoning that RCW 9A.56.300(3) requires that each count should be considered separately:

> I do agree with the defense that but for the language in RCW 9A.56.300, paragraph 3, which specifically states that each firearm taken in the theft under this section is a separate offense, that RCW 9.94A.400 would govern the calculation of the offender score here. I think that in order to properly give credence, give validity to the provisions of RCW 9A.56.300, however, the Court must count each of the firearm theft charges as one point, if you will, one offense, for purposes of determining the offender score. . . .
>
> I am certainly mindful of the provisions of 9.94A.400, but we do have a specific legislative directive here to the effect that each theft of a firearm charge, or each firearm taken in a theft of a firearm matter is to be counted as a separate offense, and I think that must require, then, that the Court accord one point to each of those offenses.

Contending that RCW 9A.56.300 applies only to *charging*, and not sentencing, Smith argues that the trial court erred when it failed to consider the seven counts of theft of a firearm as the same criminal conduct for sentencing

---

[3]Indeed, the crimes did "require the same criminal intent, [were] committed at the same time and place, and involve[d] the same victim," the criteria for same criminal conduct under the statute.

[4]RCW 9.94A.400(1)(a).

purposes. The State responds that in view of the legislative intent, scoring multiple current convictions of a firearm theft as one crime would "defeat the statutory purpose behind RCW 9A.56.300(3) and render it meaningless."

■ We agree with the trial court and the State that the people likely intended that RCW 9A.56.300(3) would require multiple offender points to be accorded to multiple firearm offenses. As the State points out, a conclusion that RCW 9A.56.300(3) does not apply to sentencing would mean that "a person who steals twenty firearms in a single incident would have the same standard sentence range as a person who steals only one firearm." That result seems contrary to both RCW 9A.56.300(3), which was intended to "provide greatly increased penalties for gun predators and for those offenders committing crimes to acquire firearms,"[5] and the SRA, which seeks to ensure "that the punishment for a criminal offense is proportionate to the seriousness of the offense . . . ." But because the plain language of RCW 9A.56.300(3) applies only to charging and the Washington Supreme Court has stated that Initiative 159 did not "amend" RCW 9.94A.400,[6] we are compelled to conclude, as did Divisions Two and Three of this court, that RCW 9A.56.300(3) does not alter sentencing calculations.[7]

In *State v. Roose*[8] the State argued, as it does here, that because the purpose of RCW 9A.56.300(3) is to increase penalties for crimes involving firearms, "the theft of each gun is not only a separate offense but adds additional current offenses to an offender score."[9] The *Roose* court rejected this argument on the basis that resort to legisla-

---

[5]LAWS OF 1995, ch. 129, § 1(2)(c).

[6]*See In re Post Sentencing Review of Charles*, 135 Wn.2d 239, 245, 955 P.2d 798 (1998).

[7]In *Charles*, 135 Wn.2d at 250 n.4, the Supreme Court recognized that when the meaning of a statute is clear, "there is no resort to rules of statutory construction."

[8]90 Wn. App. 513, 957 P.2d 232 (1998).

[9]*Id.* at 515.

tive intent is not necessary when statutory language is clear:

> [T]he applicable statute, RCW 9A.56.300(3), deals only with charging (each firearm taken in theft under this section is a separate offense). It does not speak to punishment or sentenc- ing. Based solely upon the statutory language of RCW 9A.56.300(3) and RCW 9.94A.400(1)(a), there is no conflict. The conflict arises only if the court adopts the approach urged by the State, which is to look for legislative intent, identified as increasing punishment for crimes involving firearms, and determine that the application of RCW 9.94A.400(1)(a) frustrates this intent.[10]

Because the *Roose* court viewed RCW 9A.56.300(3) and RCW 9.94A.400(1)(a) as dealing with different subjects— charging and sentencing respectively—it reasoned that it need not take the next step and harmonize the statutes by reference to their legislative history or intent.[11] The plain language of the statute compels this conclusion.

The *Roose* court distinguished *State v. Lessley*[12] in which the Supreme Court addressed the interplay between the burglary antimerger statute, RCW 9A.52.050, and RCW 9.94A.400—the "same criminal conduct" statute at issue here. The antimerger statute provides that "[e]very person who, in the commission of a burglary shall commit any other crime, may be punished therefor as well as for the burglary, and may be prosecuted for each crime sepa- rately."[13] Lessley urged the court to "ignore the burglary antimerger statute with respect to punishment but enforce it with respect to charging" because "the SRA does not mention the antimerger statute, and therefore the two pro-

---

[10]*Id.* at 517.

[11]In *State v. Simonson*, 91 Wn. App. 874, 885, 960 P.2d 955 (1998), *review denied*, 137 Wn.2d 1016 (1999), Division Two also noted that, although Initiative 159 authorizes the State to charge one count for each firearm stolen or possessed, "[c]harging . . . is different from sentencing" and "[s]entencing is controlled by RCW 9.94A.400 . . . ."

[12]118 Wn.2d 773, 827 P.2d 996 (1992).

[13]RCW 9A.52.050.

visions must function independently."[14] The court rejected this argument, reasoning that it would "frustrate[ ] one of the SRA's major purposes—proportionality."[15] The court explained that "to give defendants the same punishment they would have received if they had committed only a first degree kidnapping and never engaged in a burglary is not proportionate treatment."[16] The *Roose* court correctly noted that the antimerger statute at issue in *Lessley*, unlike the firearm theft statute, specifically addressed punishment:

> There is an important difference between *Lessley* and the case before us. The burglary antimerger statute deals with both sentencing (may be punished therefor) and charging (may be prosecuted for each crime separately). Therefore, there was an apparent conflict between the part of the statute that dealt with sentencing and the language of RCW 9.94A.400, which does not provide for additional punishment for the "same criminal conduct." Consequently, it was necessary for the court in *Lessley* to conduct an analysis of legislative intent and to employ rules of statutory construction.[17]

We agree. The Legislature specifically included punishment language in the antimerger statute. Thus, although the antimerger statute is not contained in the SRA, it clearly applies to sentencing. But because RCW 9A.56.300(3) is not included in the SRA and mentions neither sentencing nor punishment, nothing in the wording of the statute suggests that it is intended to affect sentencing. The statute is not ambiguous, so we cannot resort to legislative history to infer a meaning that the words themselves do not suggest. We conclude that, although the drafters and the voters likely intended that RCW 9A.56.300(3) apply to sentencing, the statute as written requires the trial court to consider

[14]*Id.* at 780.

[15]*Id.* at 781 (citing RCW 9.94A.010(1)).

[16]*Id.* at 781.

[17]*Roose*, 90 Wn. App. at 517.

whether multiple firearm offenses constitute the same criminal conduct under RCW 9.94A.400(1)(a).[18]

The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions.

KENNEDY, C.J., and BAKER, J., concur.

Review denied at 141 Wn.2d 1012 (2000).

[18]The basic rules of statutory construction apply with equal force to legislation by the people through the initiative process. *Charles*, 135 Wn.2d at 249.