IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 31239-9-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERT MONREAL HOGUIN, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, C.J. — Robert Hoguin was charged with second degree robbery after a loss prevention officer observed him shoplift merchandise from a Safeway store and confronted him. Mr. Hoguin resisted, and a scuffle ensued. Mr. Hoguin appeals, claiming that (1) insufficient evidence showed he took the items "from the person and in the presence of" the loss prevention officer, as charged in the information; and (2) he was denied his constitutional right to a unanimous jury verdict because the State presented evidence of several different acts of resistance to support the "use or threatened use of force" element of his robbery conviction and no *Petrich*[1] instruction was given.

---

[1] *State v. Petrich*, 101 Wn.2d 566, 572, 683 P.2d 173 (1984).

Because sufficient evidence supports Mr. Hoguin's conviction and a *Petrich* instruction was not required, we affirm.

FACTS AND PROCEDURAL BACKGROUND

In August 2012, Martin Lennartz was working as a loss prevention officer at a Safeway store in Spokane when he saw Robert Hoguin leave the store without paying for items he had taken from shelves and placed in his shopping basket. Mr. Lennartz followed Mr. Hoguin outside and told him he was under arrest. Because Mr. Hoguin refused to comply with instructions and began to move away, Mr. Lennartz grabbed him by the shirt. Mr. Hoguin elbowed Mr. Lennartz in the chest and continued to walk away.

When Mr. Lennartz approached Mr. Hoguin a second time, Mr. Hoguin grabbed hold of a bottle of Absolut Vodka in the basket as if to strike Mr. Lennartz, but then took a swing at Mr. Lennartz with his fist instead. Mr. Lennartz retreated, and Mr. Hoguin again walked away.

When Mr. Lennartz confronted Mr. Hoguin a third time, Mr. Hoguin took a swing at him using the vodka bottle. Mr. Lennartz managed to move away before being hit.

Mr. Lennartz then went back inside the store to find his partner, for backup. As the two men approached Mr. Hoguin at the far end of the parking lot, Mr. Hoguin again grabbed the Absolut bottle and "kind of reared back with it." Report of Proceedings (RP)

at 76. After a short struggle, the two officers managed to detain Mr. Hoguin and place him under arrest.[2]

Mr. Hoguin was charged with second degree robbery. The information alleged that Mr. Hoguin

> with the intent to commit theft, did unlawfully, take and retain personal property, that the defendant did not own, *from the person and in the presence of Martin H. Lennartz,* against such person's will, by use or threatened use of immediate force, violence and fear of injury to Martin H. Lennartz.

Clerk's Papers (CP) at 1 (emphasis added).

The final instructions given to the jury, however, substituted "or" for "and" in describing the two criminal means of taking and retaining property, defining robbery as follows:

> A person commits the crime of robbery in the second degree when he or she unlawfully and with intent to commit theft thereof takes personal property *from the person or in the presence of another* against that person's will by the use or threatened use of immediate force, violence, or fear of injury to that person.

CP at 25 (Instruction 7) (emphasis added). The jury was similarly instructed that to convict Mr. Hoguin of second degree robbery, the State must prove, among other elements, that he unlawfully took personal property "from the person *or* in the presence of another." CP at 26 (Instruction 8) (emphasis added).

---

[2] As a commissioned police officer, Mr. Lennartz has some limited power to arrest.

In closing argument, the prosecutor enumerated six different acts of resistance by Mr. Hoguin to support the "use of or threatened use of immediate force, violence or fear of injury" element of the second degree robbery charge. RP at 194. He argued that "[e]ither one of [the six] supports the force that's required to convict Mr. Hoguin of robbery." RP at 196. The jury instructions did not contain any language requiring the jury to unanimously agree on which of the six acts satisfied the "use or threatened use of force, violence or fear of injury" element.

Mr. Hoguin was convicted as charged and appeals.

## ANALYSIS

### I. Sufficiency of evidence

Mr. Hoguin first asserts his conviction must be reversed because the State failed to prove the crime charged in the information. Whether the State proved something other than what it charged is a question of law, reviewed de novo. *State v. Porter*, 150 Wn.2d 732, 735, 82 P.3d 234 (2004). We also review de novo a challenge to the sufficiency of the charging document. *State v. Williams*, 162 Wn.2d 177, 182, 170 P.3d 30 (2007).

Together, RCW 9A.56.190 and RCW 9A.56.210 define the crime of second degree robbery. RCW 9A.56.210(1) states that "[a] person is guilty of robbery in the second degree if he or she commits robbery." Robbery, in turn, is defined by RCW 9A.56.190 as being committed when a person

4

unlawfully takes personal property from the person of another or in his or her presence against his or her will by the use or threatened use of immediate force, violence, or fear of injury to that person or his or her property or the person or property of anyone.

The jury instructions given in Mr. Hoguin's trial mirrored the statute by stating that the crime can be committed in two ways: by unlawfully taking property *from* the person of another or *in the presence* of another.

Because the State's information charged that Mr. Hoguin took property "from the person *and* in the presence" of Mr. Lennartz, Mr. Hoguin argues that the State was required to prove that he committed robbery by both means. He concedes the State proved he unlawfully took and retained personal property in the presence of Mr. Lennartz. But he argues the State's evidence did not show he took the shoplifted items from Mr. Lennartz's person. He argues the appropriate remedy is dismissal.

While a debatable issue formerly existed as to whether criminal means that are pleaded in the conjunctive in the State's information must all be proved at trial, it is now well-settled that "[a]cts described in a penal statute in the alternative or disjunctive may be pleaded in the conjunctive," and "[p]roof that the crime was committed in any one of several nonrepugnant ways or means will support a conviction." *State v. Ford*, 33 Wn. App. 788, 789-90, 658 P.2d 36 (1983); *State v. Dixon*, 78 Wn.2d 796, 802-03, 479 P.2d 931 (1971).

In *Ford*, the defendant was charged with taking a motor vehicle without permission under former RCW 9A.56.070 (1975), *recodified as* RCW 9A.56.075(1). 33 Wn. App. at 789. Under that statute, a person was guilty of taking a motor vehicle without permission in the second degree if he intentionally took or drove away a motor vehicle without permission *or* voluntarily rode in or upon the vehicle knowing it had been unlawfully taken. The information, however, charged that the defendant "'did intentionally and without permission . . . take and drive away a motor vehicle . . . *and* with knowledge that such motor vehicle had been unlawfully taken did voluntarily ride in . . . such motor vehicle.'" *Ford*, 33 Wn. App. at 789 (alterations in original). On appeal, the court rejected the defendant's claim that because the State used the conjunctive "and," it was required to prove both the taking and the riding. *Id.* It held that "[t]he State is only required to prove either a taking or riding even though the information uses the conjunctive." *Id.* at 790.

Mr. Hoguin concedes the State proved he unlawfully took and retained personal property that he did not own in the presence of Mr. Lennartz, which is all the State had to prove. Sufficient evidence supports his conviction.

## II. *Petrich requirements do not apply*

Mr. Hoguin next asserts his conviction must be reversed because the State enumerated six acts of resistance by Mr. Hoguin and argued that "either one" could satisfy the "use or threatened use of immediate force, violence or fear of injury" element

6

of his second degree robbery charge. Although Mr. Hoguin neither proposed a *Petrich* instruction at trial nor objected to the court's instruction, "the right to a unanimous verdict is a fundamental constitutional right and may, therefore, be raised for the first time on appeal." *State v. Holland*, 77 Wn. App. 420, 424, 891 P.2d 49 (1995).

A criminal "defendant may be convicted only when a unanimous jury concludes that the criminal act charged in the information has been committed." *Petrich*, 101 Wn.2d at 569 (citing *State v. Stephens*, 93 Wn.2d 186, 190, 607 P.2d 304 (1980)), *overruled in part on other grounds by State v. Kitchen*, 110 Wn.2d 403, 756 P.2d 105 (1988)). Accordingly, "where several acts are alleged, any one of which could constitute the crime charged, the jury must unanimously agree on the act or incident that constitutes the crime." *State v. Hayes*, 81 Wn. App. 425, 430, 914 P.2d 788 (1996). In these "multiple acts" cases, the State must either elect the act on which it will rely for the conviction, or the court must instruct the jury that all 12 must agree that the same underlying criminal act has been proved beyond a reasonable doubt. *Petrich*, 101 Wn.2d at 569; *Kitchen*, 110 Wn.2d at 411.

When it comes to the elements themselves, however, it is well settled that the jury need not agree on the particular evidence that satisfies the element or, if the legislature has provided that the element can be satisfied by alternative means, the jury need not agree on the means. Instead, Washington law protects the requirements of unanimity and proof beyond a reasonable doubt for jury determinations of simple elements by

7

mandating that the jury be instructed on all essential elements of the crime charged, *State v. Van Tuyl,* 132 Wn. App. 750, 758, 133 P.3d 955 (2006) (citing U.S. CONST. amend. VI; CONST. art. I, § 22), and through substantial evidence review. Jurors are not required to agree on the evidence supporting the element; "'different jurors may be persuaded by different pieces of evidence, even when they agree upon the bottom line. Plainly there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict.'" *Schad v. Arizona,* 501 U.S. 624, 631-32, 111 S. Ct. 2491, 115 L. Ed. 2d 555 (1991) (quoting *McKoy v. North Carolina,* 494 U.S. 433, 449, 110 S. Ct. 1227, 108 L. Ed. 2d 369 (1990) (Blackmun, J., concurring)).

The *Petrich* rule only applies "where several acts are alleged, *any one of which could constitute the crime charged.*" *State v. Crane,* 116 Wn.2d 315, 325, 804 P.2d 10 (1991) (emphasis added). It has no application where the State points to several pieces of evidence (even if it is evidence of acts) as probative of a discrete element. To determine whether *Petrich* is applicable, the court must ask the following three questions: (1) what must be proven under the applicable statute, as set forth in the to-convict jury instruction; (2) what does the evidence disclose; and (3) does the evidence disclose more than one violation of the statute? *State v. Hanson,* 59 Wn. App. 651, 656 & n.5, 657, 800 P.2d 1124 (1990). The third inquiry "requires a comparison of what the statute requires with what the evidence proves. If the evidence proves only one violation, then no *Petrich*

8

instruction is required, for a general verdict will necessarily reflect unanimous agreement

that the one violation occurred." *Id.* at 657 (footnote omitted).

Here, taking multiple items of property at one time, followed by six acts of

resistance, does not amount to six acts of robbery. Second degree robbery, as defined in

the court's instructions, occurs when a person takes personal property from another by

force with intent to deprive that person of the property. In *State v. Tvedt*, 153 Wn.2d 705,

720, 107 P.3d 728 (2005), our Supreme Court made clear that

> [t]he unit of prosecution [for robbery] must encompass both a taking of
> property and a forcible taking against the will of the person from whom or
> from whose presence the property is taken. Accordingly, a conviction on
> one count of robbery may result from each separate taking of property from
> each person; however, multiple counts may not be based on multiple items
> of property taken from the same person at the same time . . .

Here, the State's evidence of one taking of multiple items of property, with the use

or threatened use of force demonstrated by evidence of several acts of resistance, proves

only one crime of second degree robbery. Because the State was not alleging multiple

acts of robbery, no unanimity instruction or election was required.[3]

---

[3] Even where separate acts *could* support separate units of prosecution, evidence may suggest that in a particular case, the acts were part of a "continuing course of conduct." *Petrich*, 101 Wn.2d at 571. Where the evidence "shows only that the defendant committed a single *continuing* offense," *State v. Simonson*, 91 Wn. App. 874, 883-84, 960 P.2d 955 (1998) (footnote omitted), the State need not make an election and no jury instruction on unanimity is required. *State v. Fiallo-Lopez*, 78 Wn. App. 717, 724, 899 P.2d 1294 (1995). "Generally, evidence that the charged conduct occurred at different times and places tends to show that several distinct acts occurred rather than a continuing course of conduct." *Id.* at 724. "In contrast, evidence that a defendant

No. 31239-9-III
*State v. Hoguin*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports but it will be filed for public record pursuant to RCW

2.06.040.

_____
Siddoway, C.J.

WE CONCUR:

_____     _____
Korsmo, J.                                     Fearing, J.

---

engages in a series of actions intended to secure the same objective supports the characterization of those actions as a continuing course of conduct rather than several distinct acts." *Id.* at 724; *see, e.g., State v. Handran*, 113 Wn.2d 11, 17, 775 P.2d 453 (1989) (multiple acts of assault, which occurred in one place during short period of time between the same aggressor and victim, showed a continuing course of conduct aimed at securing sexual relations).