# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>                       Respondent,<br><br>   v.<br><br>J. LEONOR SALAZAR DIMAS,<br><br>                       Appellant. | No. 52708-1-II<br><br><br><br>UNPUBLISHED OPINION |

CRUSER, J. — J. Leonor Salazar Dimas appeals the trial court's denial of his motion to suppress controlled substance evidence seized while federal agents executed a search warrant for a tax-related crime. Salazar Dimas claims that (1) the trial court erred in finding that the warrant authorized federal agents to search for small items because the finding was not supported by substantial evidence, (2) the search was constitutionally invalid because it was a general exploratory search exceeding the scope of the warrant, and (3) the plain view exception to the warrant requirement does not apply to the evidence seized in this case because the discovery was not inadvertent and because it was not immediately apparent that the item seized was evidence associated with criminal activity.

We hold that (1) the trial court's finding that the warrant authorized agents to search for small items was supported by substantial evidence, (2) the search was not unconstitutional because

the agents were permitted to search in all containers where objects of the search are likely to be found, and (3) the plain view exception applied to permit seizure of the evidence. Accordingly, we affirm the trial court's denial of Salazar Dimas's motion to suppress.

FACTS

The Federal Bureau of Investigation (FBI) Olympia Resident Agency, Social Security Administration, Internal Revenue Service (IRS) Criminal Investigation Division, and members of local law enforcement formed an ad hoc task force to investigate Salazar Dimas for a possible drug crime. The task force was also looking for evidence of money laundering or other financial crimes. Eventually, the investigation transitioned to focus primarily on possible financial crimes, and the IRS began to lead the investigative efforts.

On June 8, 2016, members of the task force executed a search warrant in Salazar Dimas's residence. The search warrant authorized task force agents to search Salazar Dimas's residence for documents, files, and materials in both physical and electronic form "that constitute evidence, instrumentalities, or fruits of violations" of several tax evasion statutes. Clerk's Papers (CP) at 31. The warrant specified the types of evidence to be seized and included, among other evidence, "[a]ny digital devices and storage device capable of being used to commit, further, or store evidence of the offense listed above." *Id.* at 32. In Agent Richard Schroff's opinion, electronic storage devices covered by the warrant included solid state drive (SSD) memory cards, which he later testified at the CrR 3.6 hearing can be as small as "the size of a pinky nail." 1 Verbatim Report of Proceedings (VRP) at 22.

While an IRS agent was searching Salazar Dimas's bedroom, he discovered opaque pill bottles on a bedside table. The pill bottles contained "several plastic wrappers" on top of

mismatched pills. *Id.* at 14. Some wrappers contained a "white powdery substance," which appeared to be cocaine, and others had "a green leafy material," which appeared to be marijuana. *Id.* The plastic wrappers were consistent with the method that individuals often use to store controlled substances.

The IRS agent immediately informed Schroff, who was the lead investigator on behalf of the FBI, of his discovery. The IRS agent told Schroff that he "'found drugs.'" *Id.* Before executing the warrant, the task force members agreed that IRS investigators would be responsible for any evidence discovered related to the alleged financial crimes, and the FBI would be responsible for any evidence discovered related to drug crimes. In informing Schroff, the IRS agent acted in accord with the prior arrangement between the two agencies.

Schroff then contacted the Tumwater Police Department to request drug testing kits. After testing a sample, Schroff confirmed that the white powdery substance was cocaine. At that point, Schroff seized the pill bottles, the white powdery substance, the green leafy material, and the unidentified pills.

The State charged Salazar Dimas with unlawful possession of a controlled substance-cocaine. Salazar Dimas moved to suppress the cocaine.

The trial court held a CrR 3.6 hearing during which Schroff provided the only testimony. Schroff testified consistently with the facts as laid out above. Schroff asserted that because the warrant included electronic storage devices that could be "the size of a pinky nail," the agents were permitted to search any container on the premises big enough to store such items. *Id.* at 22. Given the small size of potential evidence, Schroff believed that there was effectively "[n]o" limitation to the containers the task force agents were permitted to search. *Id.* at 23.

The trial court denied the motion to suppress, concluding that the controlled substance evidence was admissible at trial because the discovery satisfied the requirements of the plain view exception to the warrant requirement. The trial court found that "[t]he nature of the electronic storage medium and devices that the warrant authorized the agents to search for was very small." CP at 5. Due to the small size of potential evidence covered by the warrant, the trial court concluded that "agents correctly searched for devices in anything that could reasonably hold something as small as that described by [Agent] Schroff." *Id*.

A jury found Salazar Dimas guilty of possession of a controlled substance. Salazar Dimas was sentenced to 60 days confinement, with the last 30 days served on work release, and 12 months community custody. Salazar Dimas appeals only the trial court's denial of his motion to suppress.

DISCUSSION

I. SUBSTANTIAL EVIDENCE SUPPORTS THE TRIAL COURT'S FACTUAL FINDINGS

Salazar Dimas challenges the trial court's finding that "'[t]he nature of the electronic storage medium and devices that the warrant authorized the agents to search for was very small.'" Br. of Appellant at 7 (quoting CP at 5). Salazar Dimas contends that the trial court erred when it relied on Agent Schroff's testimony, adopted in the findings of fact, that electronic storage devices could be the size of a pinky fingernail. Salazar Dimas claims that Schroff's testimony in support of this finding, without further evidence, is insufficient. We disagree because substantial evidence supports the finding, and Salazar Dimas's challenge is predicated on a contention to the trial court's determination of weight and credibility, which we will not disturb on appeal.

Following denial of a suppression motion, we review challenged findings to determine whether they are supported by substantial evidence. *State v. Garvin*, 166 Wn.2d 242, 249, 207

4

P.3d 1266 (2009). Substantial evidence exists when there is sufficient evidence in the record "'to persuade a fair-minded person of the truth of the stated premise.'" *Id.* (quoting *State v. Reid*, 98 Wn. App. 152, 156, 988 P.2d 1038 (1999)). We will defer to the trial court on issues of witness credibility and weight of the evidence, but "the ultimate determination of whether those facts constitute a violation of the constitution is one of law and is reviewed de novo." *State v. Budd*, 186 Wn. App. 184, 196, 347 P.3d 49 (2015), *aff'd*, 185 Wn.2d 566, 374 P.3d 137 (2016). Challenged facts that are supported by substantial evidence are binding on appeal, and unchallenged facts are treated as verities. *State v. Hill*, 123 Wn.2d 641, 647, 870 P.2d 313 (1994).

Here, Schroff testified that the task force was searching for electronic storage devices such as SSD cards and thumb drives. He further explained that SSD cards may occasionally be as small as his pinky nail, and these devices may be found in locations such as pill bottles. This evidence is sufficient to persuade a rational person that electronic storage devices subject to the search warrant may be small in size.

We disagree with Salazar Dimas's claim that Schroff's testimony was insufficient because he did not describe any expertise regarding "digital media" and he did not testify regarding any prior experience in "executing federal tax warrants" involving these types of storage devices. Br. of Appellant at 8. This assertion goes to Schroff's credibility, but "[t]he trier of fact is in a better position to assess the credibility of witnesses, take evidence, and observe the demeanor of those testifying." *Hill*, 123 Wn.2d at 646.

Salazar Dimas also claims that the evidence was insufficient because the agent who initially found the controlled substance inside the pill bottles did not testify at this hearing. This claim also

fails because there is no reason that the agent who discovered the evidence would be in a better position to testify about the scope of the warrant or the size of electronic storage devices generally.

## II. SCOPE OF THE SEARCH

Salazar Dimas challenges the trial court's conclusions of law that the premises warrant in this case authorized the law enforcement officers to search any container within the premises that could reasonably hold data storage devices of the small size described by Schroff and that the search by the officers did not exceed the scope of the warrant. He argues that the search was constitutionally invalid because the warrant was limited to evidence pertaining to alleged tax crimes but agents searched for evidence that went beyond the alleged tax crimes, and the scope of the search was so broad that it was effectively a general exploratory search. We disagree and hold that the warrant authorized the officers to look inside any containers within the premises that might reasonably contain evidence of the crime under investigation and that the officers did not exceed the allowable scope of the search by looking inside small containers that might hold small data storage devices.

### A. LEGAL PRINCIPLES

Law enforcement officers must execute a warrant within the strict limits set by the warrant. *State v. Figeroa Martines*, 184 Wn.2d 83, 94, 355 P.3d 1111 (2015). The scope of a search warrant is determined by a common-sense reading of the warrant. *State v. Lyons*, 174 Wn.2d 354, 360, 275 P.3d 314 (2012). We review a trial court's conclusions of law pertaining to a suppression hearing de novo. *Figeroa Martines*, 184 Wn.2d at 90. We will also review de novo whether a search violated the Fourth Amendment of the United States Constitution or article I, section 7 of

the Washington Constitution. *State v. Witkowski*, 3 Wn. App. 2d 318, 324, 338, 415 P.3d 639, *review denied*, 191 Wn.2d 1016 (2018).

Washington courts have held that when police execute a premises search warrant, they are authorized to search containers within the premises where the objects of the search are likely to be found. *Witkowski*, 3 Wn. App. 2d at 328; *see also State v. Simonson*, 91 Wn. App. 874, 878, 886-87, 960 P.2d 955 (1998). A search warrant that covers the search of a house also includes within its scope "a search of containers in the house that could hold one or more of the items specified in the warrant." *Simonson*, 91 Wn. App. at 887.

B. ANALYSIS

Salazar Dimas does not challenge the validity of the warrant but instead limits his claim to a challenge regarding the scope of the search itself and what was authorized by the plain language of the warrant. To support his assertion that the task force agents exceeded the allowable scope of the warrant, he relies on the testimony of Schroff at the CrR 3.6 hearing. Further, he mischaracterizes Schroff's testimony. Salazar Dimas asserts that Schroff "perhaps hubristically, but certainly candidly," admitted that there was no limit to the scope of the agents' search. Br. of Appellant at 13. However, Schroff's response was narrower than Salazar Dimas implies because Schroff stated that there was no limit to the *types of containers* agents could permissibly search. Furthermore, Schroff's opinion about the breadth of the search permitted by the warrant is irrelevant. The allowable scope of the search, and whether the agents exceeded that scope, were questions for the trial court. The trial court solved this question by examining the plain language of the warrant and the conduct of the agents. A law enforcement officer's *opinion* about whether

law enforcement exceeded the allowable scope of a search plays no role in the trial court's analysis nor in our analysis.

The scope of the search that the agents conducted did not exceed the authority granted to them by the warrant because they were permitted to search containers where the objects of the search may likely be discovered. *See Witkowski*, 3 Wn. App. 2d at 328. Because a premises warrant authorizes the search of any container within the premise that could hold the items sought in the warrant, the trial court did not err in concluding that this warrant allowed the agents to search in any container, even one as small as the pill bottle in question here, for data storage devices that might contain evidence of the financial crimes under investigation. Consequently, the agents' search of all containers that could potentially hold evidence the size of a "pinky fingertip" did not exceed the scope of the search warrant. CP at 5.

### III. PLAIN VIEW EXCEPTION

Salazar Dimas argues that the plain view exception to the warrant requirement does not apply to the evidence in this case because the controlled substance was not discovered inadvertently and because the agent had to test the substance to confirm that it was cocaine. We disagree and hold that the evidence is admissible because it was discovered in plain view during a search authorized by a valid warrant.

"'Officers with a proper search warrant for premises have the right to seize any contraband which they discover while conducting a search within the scope of the warrant.'" *State v. Hatt*, 11 Wn. App. 2d 113, 134, 452 P.3d 577 (2019) (quoting *State v. Burleson*, 18 Wn. App. 233, 239, 566 P.2d 1277 (1977)), *review denied*, No. 97994-4, 2020 WL 1551273 (Wash. Apr. 1, 2020). This is so because "a policeman in the course of a valid search is entitled to keep his senses open

to the possibility of contraband, weapons, or evidence of a crime. This recognition is at the core of the plain view doctrine." *State v. Lair*, 95 Wn.2d 706, 719, 630 P.2d 427 (1981).

Here, officers were lawfully permitted to search inside the opaque pill bottles. As explained in section II, *supra*, the warrant permitted agents to search all containers that could potentially hold evidence of the crime under investigation. *See Witkowski*, 3 Wn. App. 2d at 328. In this case, evidence of the financial crimes under investigation could have been found on small electronic storage devices of the type that could feasibly fit in a pill bottle.

Evidence seized pursuant to the plain view doctrine is admissible "when the police (1) have a valid justification to be in an otherwise protected area, provided that they are not there on a pretext, and (2) are immediately able to realize the evidence they see is associated with criminal activity." *State v. Morgan*, 193 Wn.2d 365, 371, 440 P.3d 136 (2019), *cert. denied*, No. 19-494, 2020 WL 873829 (U.S. Feb. 24, 2020). There is no inadvertent discovery requirement to admit evidence pursuant to the plain view doctrine. *Id*.

Salazar Dimas agrees that the valid justification requirement is satisfied by the existence of the search warrant in this case. In addition, because there is no inadvertence requirement, Salazar Dimas's contention that the evidence was not discovered inadvertently is irrelevant. *Id*. Therefore, the only issue before us is whether the agents were able to immediately realize that the items discovered in the pill bottles were associated with criminal activity. *See id*.

The plastic-wrapped white powdery substance was immediately recognizable as evidence of criminal activity. This prong of the plain view exception is established "'when, considering the surrounding circumstances, the police can reasonably conclude' that the subject evidence is

associated with a crime." *Id.* at 372 (quoting *State v. Hudson*, 124 Wn.2d 107, 118, 874 P.2d 160 (1994)).

Here, Schroff testified that the IRS agent informed him that he "'found drugs'" immediately upon discovering the plastic wrapped white powdery substance in the pill bottles. 1 VRP at 14. Schroff agreed that according to his first impression, the white powdery substance was cocaine. In addition, Schroff explained that the type of packaging was consistent with that often used to contain controlled substances. These circumstances are sufficient to allow law enforcement officials to reasonably conclude that the plastic-wrapped packages contained evidence associated with a crime. *See Morgan*, 193 Wn.2d at 372.

Salazar Dimas's claim that the evidence did not satisfy the second prong of the plain view doctrine because the officers could not confirm that the substance was cocaine until after it was tested is without merit. "Certainty is not necessary." *Id.* It was enough that multiple agents immediately recognized that the white powdery substance was likely cocaine. The evidence is therefore admissible pursuant to the plain view doctrine even if the evidence described by the valid search warrant was limited to evidence of alleged federal tax crimes.

CONCLUSION

We hold that (1) the trial court's finding that the warrant authorized agents to search for electronic storage devices that can sometimes be small objects was supported by substantial evidence, (2) the scope of the search was constitutional because the agents were permitted to search containers that were likely to contain evidence of the crimes listed in the warrant and the officers' search did not exceed the allowable scope of the warrant, and (3) the controlled substance

No. 52708-1-II

discovered in the opaque pill bottles was admissible pursuant to the plain view exception to the warrant requirement. Accordingly, affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

CRUSER, J.

We concur:

MAXA, P.J.

GLASGOW, J.