148 P.3d 1077 (2006)
STATE of Washington, Respondent,
v.
Donald Earl STOCKMYER, Appellant.
No. 33396-1-II.
Court of Appeals of Washington, Division 2.
December 12, 2006.
*1078 Patricia Anne Pethick, Tacoma, WA, for Appellant.
David Harold Bruneau, Thurston County Prosecuting Atty. Office, Olympia, WA, for Respondent.

PUBLISHED IN PART OPINION
HUNT, J.
¶ 1 Donald Earl Stockmyer appeals his jury convictions for assault with a deadly weapon, drug manufacture, and seven counts of unlawful gun possession. He argues that (1) he did not receive a speedy trial; (2) a late amended information prejudiced him; (3) the evidence was insufficient to convict him on four of his possession convictions; and (4) the trial court incorrectly calculated his offender score because it should have considered his seven gun-possession crimes as two sets of the same criminal conduct under RCW 9.94A.525(8).
¶ 2 We accept the State's concession that counts VI-IX encompassed the same criminal conduct and that, therefore, Stockmyer should be resentenced. Holding that guns found in different rooms in the same house are found in different "places" for purposes of the same-criminal-conduct test under RCW 9.94A.589(1)(a), we affirm Stockmyer's convictions and remand for resentencing.

FACTS

I. SEARCH WARRANT EXECUTION
¶ 3 On January 14, 2005, SWAT[1] officers announced their presence, knocked on the front door, and executed a warrant to search Stockmyer's Olympia home for drug[2] and to arrest his person for a probation violation. As the officers entered the front door, Stockmyer[3] shot at them. The bullet passed so close to the officers' faces that they could feel its concussion. The officers took Stockmyer into custody.
¶ 4 Smelling marijuana, the officers then completed the search warrant. They found 208 marijuana plants and three firearms: a .30/06 rifle, in the closet near the front door entryway; a .44 Desert Eagle handgun, on top of the refrigerator in the kitchen; and the .380 semi-automatic pistol that Stockmyer *1079 had shot at them, on a kitchen counter. Stockmyer had been sleeping with the .380 in the front room and usually kept it in his bedroom.
¶ 5 On February 10, police executed a second search warrant for Stockmyer's safe, which he kept in a friend's Puyallup garage.[4] Only Stockmyer had the combination for this safe. Police found four additional firearms inside this safe: two .22's, a model Winchester .44, and a Smith & Wesson, model 29, .44. Stockmyer admitted that these were his firearms and explained that he stored them in the safe "in case [he] was ever arrested." During this time, Stockmyer remained in custody.

II. PROCEDURE
¶ 6 The State charged Stockmyer with: attempted first degree murder, with a firearm enhancement (Count I); unlawful manufacture of a controlled substance (marijuana), with a firearm enhancement (Count II); and seven counts of first degree unlawful possession of a firearm (Counts III-IX), one for each of the guns found during the search. In Count I, the State charged Stockmyer with attempted first degree murder by the following alternative methods, both while "armed with a firearm, a deadly weapon": (1) causing the death of another with "premeditated intent," or (2) with "extreme indifference to human life," engaging in conduct creating "grave risk of death."

A. Continuances
¶ 7 On January 26, 2005, the court set Stockmyer's trial for March 21, 54 days later. The State moved for a two-week continuance to accommodate previously planned travel. Although Stockmyer objected to any continuance, Stockmyer's counsel moved to continue the trial date an additional one or two weeks, if the trial court granted the State's motion, because he had a conflict with the proposed new trial date.
¶ 8 After ruling that there was good cause for both continuances, the trial court reset trial for April 11. Stockmyer did not request an earlier trial date.
¶ 9 Before the April 11 trial date, the court granted the State another continuance because an important state witness was scheduled be out of the country at that time. The court granted the motion and reset the trial for April 25.
¶ 10 On April 25, Stockmyer moved for another continuance to allow time to prepare to represent himself pro se. The court granted Stockmyer's motion and reset the trial for May 9, 103 days after Stockmyer's arraignment. The trial court appointed standby counsel to assist Stockmyer during his pro se representation.

B. Trial
¶ 11 Trial began on May 10. For purposes of the unlawful firearm possession charges, Stockmyer stipulated that he had a prior conviction for a serious offense.[5] He also testified in his own behalf, admitting, among other things, that he owned and possessed the firearms, knew it was illegal for him to possess them, and that he was growing and selling marijuana.
¶ 12 On May 16, the State filed a third amended information changing the language of Count I as follows: It replaced the "extreme indifference" alternative method of committing murder with first degree assault with a firearm, deadly weapon. Stockmyer did not object to this amendment. On the contrary, when specifically asked by the trial court, he stated that he had no objection.
¶ 13 The jury found Stockmyer guilty of first degree assault with a firearm enhancement (Count I), unlawful manufacture of a controlled substance (marijuana) with a firearm enhancement (Count II), and seven counts of first degree unlawful possession of a firearm (Counts III-IX).

C. Sentencing
¶ 14 The trial court calculated Stockmyer's offender score by treating each count as *1080 separate criminal conduct.[6] This calculation resulted in offender scores of 13 for count I and 10 for counts II-IX. The trial court sentenced Stockmyer to (1) 318 months confinement, with an additional 60 months confinement for the firearm enhancement, on count I; (2) 24 months plus 18 months of firearm enhancement, on count II; and (3) 116 months each on counts III-IX. The trial court ran these sentences concurrently except for the firearm enhancements, which it ran consecutively.[7]

D. Appeal
¶ 15 Stockmyer appealed all his convictions and offender score calculations. The parties' opening briefs lacked support for their respective positions on whether guns found in different rooms in Stockmyer's home should be considered to have been found in the "same place" for purposes of the same-criminal-conduct statutory test.[8] We ordered, and received, supplemental briefs on this issue.

ANALYSIS

I. SEPARATE OR SAME CRIMINAL CONDUCT
¶ 16 Stockmyer argues that (1) his convictions for possession of the three guns in his home, counts III-V, constituted the same criminal conduct; (2) similarly, his convictions for possession of the four guns in the safe at his friend's home, counts VI-IX, constituted the same criminal conduct; and (3) therefore, these crimes should count as only two, rather than seven, for purposes of calculating his offender score under RCW 9.94A.589(1)(a).
¶ 17 The State concedes that Counts VI-IX encompassed the same criminal conduct in that the firearms Stockmyer possessed in the Puyallup safe were in the same place. Accepting this concession, we turn to Counts III-V, the three firearms Stockmyer kept in his home. The State argues that the guns found in different rooms of Stockmyer's home (counts III-V) were not the same criminal conduct because they were found in different places.[9] This is an issue of first impression.

A. Standard of Review
¶ 18 Our Legislature has provided that (1) each firearm a defendant possesses is a separate offense, RCW 9.41.040(7); but (2) when separate offenses encompass the "same criminal conduct," they count as one crime for offender-score calculation purposes, RCW 9.94A.589(1)(a). We generally construe this statute narrowly so that most crimes are not considered to be the same criminal conduct. State v. Porter, 133 Wash.2d 177, 181, 942 P.2d 974 (1997).
¶ 19 Multiple crimes encompass the "same criminal conduct" if they result from the same criminal intent, involve the same victim, and occur at the same time and place. RCW 9.94A.589(1)(a). We give deference to the trial court's same-criminal-conduct determination such that we "will not reverse a sentence unless [we] find[] a clear abuse of discretion or misapplication of the law." State v. Elliott, 114 Wash.2d 6, 17, 785 P.2d 440, cert. denied, 498 U.S. 838, 111 S.Ct. 110, 112 L.Ed.2d 80 (1990).

B. Different Rooms, Different Places
¶ 20 We have previously held that multiple, unlawful firearm possession convictions constitute the same criminal conduct if the possessions *1081 occurred at the same time and place. State v. Simonson, 91 Wash.App. 874, 885-86, 960 P.2d 955 (1998), review denied, 137 Wash.2d 1016, 978 P.2d 1098 (1999). But Simonson does not control here. Simonson was in custody for unrelated charges when emergency personnel entered his trailer following an explosion and seized firearms from his bedroom. In holding that the purpose of so many loaded guns was to protect the trailer from attack, we assessed whether the guns were "readily available for use." Simonson, 91 Wash.App. at 882-83, 960 P.2d 955. We held that Simonson's constructive possession of these firearms was the same criminal conduct because he possessed all the firearms in one bedroom and all the firearms were within his ready access from his bed.
¶ 21 In contrast, Stockmyer possessed three different firearms in three different rooms in his residence: (1) in the closet near the entryway; (2) on top of the refrigerator in the kitchen; and (3) in his living room, or bedroom, depending on where he was sleeping.[10] Stockmyer thus had ready access to loaded firearms in these three different locations.
¶ 22 Because we narrowly construe the "same place" requirement, we cannot say as a matter of law that Stockmyer's possession of multiple firearms in these three different locations constituted the same criminal conduct. Moreover, multiple guns in different rooms in felons' homes increase the peril to both law enforcement and the general public in that they provide felons with easier and more ready access to guns in the home, thus increasing the possibility of harm to others.
¶ 23 Consistent with this possibility, Stockmyer testified that (1) he kept his loaded firearms in various locations around the house to protect himself from uninvited intruders, robbers, and police; (2) he kept the pistol in his bedroom so it would be handy anytime he needed it; and (3) on a sill outside his front door, he displayed empty cartridge cases from bullets he had fired, specifically to alert anyone standing on his porch that he was armed and dangerous.
¶ 24 We hold that guns found in different rooms in the same house are found in different "places" for purposes of the same criminal conduct test under RCW 9.94A.589(1)(a). We further hold, therefore, that the trial court did not abuse its discretion or err in calculating his offender score on Counts III-V as separate criminal conduct.
¶ 25 Accordingly, we remand for resentencing on only Counts VI-IX, possession of the four firearms in the safe, which the State concedes were in the same place and met the other factors for establishing that their possession was the same criminal conduct for offender score calculation purposes.
¶ 26 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
We concur: BRIDGEWATER, P.J., and ARMSTRONG, J.
NOTES
[1] "SWAT" stands for Special Weapons and Tactics. SWAT teams consist of "a police or military unit specially trained and equipped to handle unusually hazardous situations or missions." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 134a (2002).
[2] Stockmyer concedes that the warrant was based on valid probable cause and that the officers properly knocked and identified themselves before forcibly entering his home.
[3] Stockmyer was standing in the foyer against a wall by the kitchen next to the grow room.
[4] Stockmyer remained in police custody at the time of this search.
[5] Stockmyer was convicted of manslaughter in 1994.
[6] The trial court checked the box on the Judgment and Sentencing form indicating, "None of the current offenses constitute same criminal conduct." Clerk's Papers at 175.
[7] Thus, Stockmyer's total sentence was 396 months.
[8] Without further explanation, Stockmyer simply asserted it "cannot be disputed" that counts III-V "were committed at the same time and place." Br. Appellant at 13. The State responded that Stockmyer "slept with the .380 pistol (in his bedroom), the 30-06 rifle was stationed nearby the front door, and the .44 magnum handgun was in the kitchen. Thus, these offenses were not committed at the same time and place." Br. Respondent at 4-5.
[9] The State does not argue that Stockmyer's possession of the seven guns involved separate criminal intent or separate victims, or that he committed the crimes at separate times. Br. Respondent 4-5. We further note that the victim in a gun possession case is the public at large. State v. Haddock, 141 Wash.2d 103, 110-11, 3 P.3d 733 (2000).
[10] After shooting at the police, Stockmyer deposited this gun on the kitchen counter, where the police seized it.