THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 80259-3-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| KEITH RAWLINS, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

ANDRUS, A.C.J. — Keith Rawlins challenges his convictions and sentences for drive by shooting, two counts of first degree assault with firearm enhancements, three counts of unlawful possession of a firearm, hit and run, and possession of methamphetamine with intent to deliver. We affirm his convictions.

FACTUAL BACKGROUND

On March 19, 2018, Rawlins, driving a Dodge Caravan, chased down a Dodge Caliber after teenagers in that car attempted to purchase marijuana from him. State v. Rawlins, no. 80259-3-I, slip op. at 2-3, noted at 16 Wn. App. 2d 1080 (Wash. Ct. App. March 22, 2021).[1] During the chase, either Rawlins or an accomplice inside the Caravan fired multiple shots at the Caliber, causing it to

---

[1] https://www.courts.wa.gov/opinions/pdf/802593.pdf.

Citations and pin cites are based on the Westlaw online version of the cited material.

crash and injuring one of the teenagers. Id. In a subsequent search of Rawlins's home, law enforcement found several weapons and controlled substances. A jury convicted Rawlins of drive-by shooting; two counts of first degree assault, both with a firearm enhancement; three counts of unlawful possession of a firearm; hit and run; possession of methamphetamine and heroin; and possession of methamphetamine with intent to manufacture or deliver.

At Rawlins's original sentencing hearing, the State recommended an exceptional sentence on the two assault convictions based on the jury's finding that Rawlins committed these crimes with a firearm. But it asked the court to depart downward from the statutory duration of 60 months and impose only 30 months for each enhancement. The trial court accepted the recommendation and entered findings of fact and conclusions of law for the exceptional sentence:

> Based upon the agreement of the parties and based upon the facts and circumstances of this case, the parties have agreed to an exceptional sentence with regards to the firearm enhancements as found by counts 2 and 3. The parties agree to impose a period of 30 months on each firearm enhancement for counts 2 and 3.

The court concluded that "[a]n exceptional sentence is appropriate upon the agreement of the parties. The Court imposes a downward sentence on each firearm enhancement of 30 months."

On appeal, Rawlins challenged—among other issues—his drug possession convictions under State v. Blake, 197 Wn.2d 170, 481 P.3d 521 (2021), certain conditions of community custody, and the imposition of discretionary legal financial obligations. The State conceded that the two drug possession convictions should be vacated and that the challenged community custody and legal financial

- 2 -

obligation provisions should be stricken from the judgment and sentence. As a result of these concessions, we permitted the trial court to conduct a new sentencing hearing:

> . . . [W]e ask the trial court to conduct a new sentencing hearing to consider the effect, if any, of Blake on Rawlins's drug possession convictions, and to address the other errors conceded by the State on appeal. Pursuant to RAP 7.2, we authorize the trial court to modify Rawlins's judgment and sentence, if necessary.

Id. at *10. We reserved ruling on the other assignments of error Rawlins raised on appeal.

On remand, the State argued for the first time that it had miscalculated Rawlins's offender scores on multiple counts and the trial court erred in imposing firearm enhancements of 30 months, maintaining that the court lacked the discretion to deviate downward in the duration of these enhancements. Over Rawlins's objection, the trial court granted the State's request to modify the sentence, corrected the errors in the offender score, and imposed two 60-month firearm enhancements to run consecutively to the base sentence "subject to seeking approval for the sentence from the Court of Appeals." The modified sentence is now 422 months of total confinement. While this sentence is 21 months shorter than the original sentence, it remains 60 months longer than it would have been if the court had not modified the firearm enhancement terms.

The State filed a RAP 7.2(e) motion to permit the trial court to enter the new judgment and sentence reflecting the changes to the offender scores and the firearm enhancement terms. See State's RAP 7.2(e) Motion filed April 30, 2021. This court granted the motion, but reserved ruling on the merits of Rawlins's

arguments regarding the validity or appropriateness of the trial court's new sentence. See Order entered May 28, 2021. Rawlins appeals from the modified judgment and sentence.

ANALYSIS

The following assignments of error remain after remand: (A) the trial court erred in denying his motion for a mistrial based on an allegedly prejudicial juror statement, (B) that the State violated his Sixth Amendment rights by intercepting attorney-client communications, and an associated ineffective assistance of counsel claim based on his defense attorney's failure to investigate Rawlins's claim that the jail had intercepted his letters, (C) the trial court erred in admitting one of the victim's medical records, (D) the jury instructions violated his right to jury unanimity on one count of unlawful possession of a firearm, (E) the trial court failed to consider his unlawful possession of a firearm convictions as the same criminal conduct for the purposes of sentencing, (F) the State did not present sufficient evidence that he was the individual who committed the drive-by shooting, and (G) the trial court erred in changing the duration of the two firearm enhancements from 30 months, as originally requested by the State, to the statutorily-mandated 60 months.

A. Sixth Amendment Claim relating to Legal Mail

Rawlins contends the trial court erred in concluding that the State did not violate his Sixth Amendment right to counsel by intercepting a four-page letter he wrote to his attorney laying out his "blueprint" trial strategy.

1. <u>Facts relating to this claim</u>

At a July 11, 2019 pretrial hearing, Rawlins complained to the court that his defense counsel, Devin Hennessey, had refused to file a CrR 8.3(b) motion to dismiss based on the jail staff's alleged interception of attorney-client mail. Defense counsel informed the court that he had no basis for filing such a motion.

On July 15, 2019, Rawlins again complained that the State had intercepted documents related to trial strategy. Defense counsel informed the court that Rawlins was upset with him for not bringing a motion to dismiss but, after reviewing relevant case law, he had concluded that "we would not be able to show the kind of record that would demonstrate the kind of prejudice that would make this kind of motion successful." He further explained that Rawlins's complaints stemmed from a document defense counsel had copied and returned to the jail at Rawlins's request, but he had no information about the contents of that document or Rawlins's allegation that the State had intercepted it. Rawlins described the document as "a four-page letter that . . . had places, and dates, and several names [of potential witnesses]." He stated that he had given his attorney the document on March 14, 2019 and requested that Hennessey make a copy for him. When he did not receive the copy, Rawlins called his defense attorney, who then spoke to a sergeant at the jail. Counsel confirmed that he had spoken to Sergeant Storie at the jail, who had informed him that the document the jail had received was discovery and, under jail policy, could not to be given to the inmate. The prosecutors denied any knowledge of the document.

The court denied Rawlins's motion for a CrR 8.3 hearing, stating "I just don't have enough information at this point in time to validate these issues" and further found defense counsel had rationally justified his strategic decisions.

On appeal, Rawlins argued the trial court had erred in failing to conduct an evidentiary hearing into his claim that the jail had intercepted attorney-client communications in violation of the Sixth Amendment. This court remanded the case for an evidentiary hearing to address the factual and legal questions laid out in State v. Irby, 3 Wn. App. 2d 247, 415 P.3d 611 (2018), "and, if necessary, to fashion an appropriate remedy." Rawlins, slip op. at *9.

The court conducted a three-day evidentiary hearing in April 2021. Rawlins testified that he had given a handwritten letter to his trial attorney "concerning trial strategies" that included names of potential witnesses, dates and times, addresses, and cell phone contact information. He testified that he handed Hennessey the letter in an envelope at the omnibus hearing on March 14, 2019 and that Hennessey agreed to return a copy of the document to him the following day, but when he called Hennessey's office the following week, he was told that Hennessey had dropped the letter off at the front desk of the jail. Rawlins said he never received it and it was not in the "discovery" box at the jail when he checked.

The State presented testimony from each of the three prosecutors who worked on Rawlins's trial, the lead detective on the case, and Sgt. Storie. Each testified that they had not intercepted or seen the missing document. Sgt. Storie explained the jail's policy regarding the delivery of discovery and attorney-client mail to inmates. Attorneys who wish to deliver such material to their clients may

leave it at the front desk. Discovery is put in a filing cabinet in the property room, where it can be accessed by the inmate upon request. Legal mail containing no discovery goes into a basket and is later delivered to the inmate. Sgt. Storie testified that after reviewing staff schedules and communicating with 25 jail employees, she could find no indication that anyone in the jail received, intercepted, or reviewed any legal mail belonging to Rawlins.

Hennessey testified that he remembered Rawlins handing him an envelope at the March 14, 2019 hearing, but his file records and notes did not reflect that what Rawlins gave him included any documents containing trial strategy. He had no recollection of ever seeing the four-page document Rawlins alleged to be missing. Hennessy also testified that Rawlins never gave him names of people he wanted called as witnesses, but that Rawlins told him to get any contact information on any potential defense witnesses from Rawlins's cell phone. Hennessey confirmed that after reviewing his file for this case three or four times, he could find no letter like the one Rawlins describes giving him on March 14. His notes reflect that he may have delivered discovery to Rawlins around this time period.

The trial court found that there was nothing to indicate that the document Hennessey delivered to the jail contained privileged information under the Sixth Amendment to the United States Constitution, that the jail improperly classified an attorney-client communication as "discovery," or that any letter Rawlins wrote to Hennessey was intercepted by any state actor. Accordingly, the court concluded that no state actor infringed Rawlins's Sixth Amendment rights.

2. Analysis

We apply a four-step inquiry into the question of whether a defendant's Sixth Amendment rights have been violated, asking:

1. Did a state actor participate in the infringing conduct alleged by the defendant?
2. If so, did the state actor(s) infringe on a Sixth Amendment right of the defendant?
3. If so, was there prejudice to the defendant? That is, did the State fail to overcome the presumption of prejudice arising from the infringement by not proving the absence of prejudice beyond a reasonable doubt?
4. If so, what is the appropriate remedy to select and apply, considering the totality of the circumstances present, including the degree of prejudice to the defendant's right to a fair trial and the degree of nefariousness of the conduct by the state actor(s)?

Irby, 3 Wn. App. 2d at 252.

At issue here is only the second element of the Irby test. In Irby, we held that jail guards opening and reading privileged attorney-client correspondence infringes on the Sixth Amendment right to counsel. 3 Wn. App. 2d at 256. The trial court here found that the jail guards did not read any such protected correspondence and that no infringement occurred.

We review a claim of a denial of Sixth Amendment rights de novo. State v. Jones, 168 Wn.2d 713, 719, 230 P.3d 576 (2010). But when a trial court has weighed evidence, evaluated the credibility of witnesses and made factual findings, the substantial evidence standard of review applies. Seattle Police Dep't v. Jones, 18 Wn. App. 2d 931, 942, 496 P.3d 1204 (2021); State v. Homan, 181 Wn.2d 102, 105-06, 330 P.3d 182 (2014). "Substantial evidence" is " 'evidence sufficient to persuade a fair-minded, rational person of the truth of the finding.' " State v. Levy, 156 Wn.2d 709, 733, 132 P.3d 1076 (2006) (quoting State v.

- 8 -

Mendez, 137 Wn.2d 208, 214, 970 P.2d 722 (1999). We do not disturb a trier of fact's credibility determinations on appeal. State v. Camarillo, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

Rawlins first challenges the finding that "there is nothing to indicate" that the enveloped document given to Hennessey at the omnibus hearing "was a blueprint to trial tactics or similar." Rawlins argues that there was evidence to the contrary— specifically, his testimony and evidence of his contemporaneous complaints to his attorney and jail staff indicating that the missing document contained trial tactics.

But the trial court was not required to find Rawlins's testimony credible. The court's finding is supported by Rawlins's inconsistent descriptions of the document he claimed was intercepted by the jail guards. At the evidentiary hearing, Rawlins characterized the document as

> a handwritten letter . . . concerning trial strategies. . . . It was names of potential witnesses . . . some partial addresses, information concerning my cell phone contact list. . . . I think I even mentioned a couple medications in there of my wife, that my wife was taking, and a recent surgery that she had had, important personal information.

But in Rawlins's contemporaneous complaints to jail staff, he never described the document he claimed he provided to Hennessey; he only referred to it as "legal mail" and when asked by Sgt. Storie for a more specific description of the document, he did not respond.

Moreover, Hennessey testified that Rawlins never gave him any such list of potential trial witnesses or trial strategy letter. Hennessey further testified that his records do not indicate that Rawlins ever gave him any such document. In light of this evidence, a reasonable fact-finder could find that the record does not indicate

that whatever document Rawlins gave Hennessey on March 14, 2019, did not constitute a letter laying out his proposed trial strategy.

Moreover, while Rawlins may have personal knowledge of what he handed Hennessey at the March 14 hearing, he has no knowledge of exactly what Hennessey delivered to him on March 18. Given that Hennessey had no recollection of ever receiving a trial strategy letter from Rawlins and could find no such letter in his files, and given that Hennessey's contemporaneous notes suggest he delivered discovery to Rawlins around the same time, the court could easily find it more than probable that whatever Hennessey dropped off at the jail on March 18 was not a copy of Rawlins's trial strategy. If Hennessey did not bring a copy of this letter back to the jail, then there would have been no attorney-client communication to be intercepted or read by any state actor.

Rawlins also challenges the trial court's finding that "Hennessey's notes, made to his file at that time, all indicate that the materials he received from Rawlins on March 14 were materials that would not constitute Sixth Amendment privileged communications." The record contains several notes from Hennessey's case file made during Rawlins's trial. In one undated note, Hennessey wrote on a copy of the Irby decision: "Prejudice to Keith fair trial: - materials were related to civil suit, calendar, and were discovery that I received from the State." In a note date July 14, 2019, Hennessey wrote that the document "had discovery." None of Hennessey's notes indicate materials he received from Rawlins were attorney-client privileged communications. There is substantial evidence supporting this finding.

- 10 -

Next, Rawlins challenges the trial court's finding that "Hennessey brought documents to the jail on March 18, 2019, for Rawlins. Those items were determined by the jail to be 'discovery.' " He argues that substantial evidence does not support this finding because no one from the jail testified as such. But when Rawlins first complained about the missing "legal mail," the jail staff responded that documents were discovery and treated as such. This finding is further supported by Hennessey's case notes characterizing the document as discovery.

Finally, Rawlins challenges the trial court's finding that the document "was not intercepted by the jail or any state actor" and that "no privileged Sixth Amendment communication was passed on to the prosecutors prosecuting Rawlins's case nor to any of the law enforcement officers who had been involved in investigating the case." But because there is no evidence that Hennessey ever delivered a copy of a trial strategy letter to the jail, it logically follows that no state actor intercepted or even saw the document in question. And the record amply supports the finding that jail guards did not communicate any privileged information to law enforcement or prosecutors involved in the case. The lead police investigator, all three prosecutors involved in the case, as well as Sergeant Storie, each testified that they had not intercepted, seen or heard about any trial strategy letter written by Rawlins to his attorney. Sufficient evidence supports these findings, which in turn support the court's conclusion that no state actor violated Rawlins's Sixth Amendment rights.

Rawlins also contends the evidentiary hearing was inadequate, arguing that the court did not conduct a sufficient search into Hennessey's case file for the

missing letter and the State failed to call the two jail officers who might have been present at the front desk when Hennessey dropped it off. We reject these arguments. First, Hennessey testified that he reviewed his 2800-page case file three or four times and could not find any evidence that he ever received a trial strategy letter from Rawlins. Second, he produced several pages of contemporaneous notes, none of which substantiate Rawlins's claim regarding the contents of the missing document. There is no evidence in the record to indicate another search of the case file would yield any different result.

As for the two font desk jail officers who manned the front desk of the jail in 2019, both since retired, one had no recollection of receiving any legal mail for Rawlins and the other resides out of state. Typically, the defendant bears the burden of proving that a Sixth Amendment violation occurred. See State v. Kitt, 9 Wn. App. 2d 235, 243, 442 P.3d 1280 (2019) (defendant must prove Sixth Amendment ineffective assistance of counsel). Rawlins has failed to demonstrate how a three-day evidentiary hearing during which he had the opportunity to call any witness he sought to testify was inadequate.

Finally, Rawlins argues he received ineffective assistance of counsel when Hennessey failed to conduct a reasonable investigation into his claimed missing mail or failed to file a CrR 8.3(b) motion to dismiss for government misconduct. We deem these arguments to be without merit.

Whether a defendant received ineffective assistance of counsel is a mixed question of fact and law that we review de novo. In re Pers. Restraint of Fleming, 142 Wn.2d 853, 865, 16 P.3d 610 (2001). To demonstrate ineffective assistance

of counsel,

> [f]irst, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). See also State v. Benn, 120 Wn.2d 631, 845 P.2d 289 (1993). "There is a strong presumption that counsel has rendered adequate assistance and has made all significant decisions in the exercise of reasonable professional judgment." Id. at 665.

Hennessey testified he decided not to file a CrR 8.3(b) motion because after researching applicable case law, he did not believe he would be able to "demonstrate the kind of prejudice that would make this kind of motion successful." Given that the evidentiary hearing revealed no evidence to corroborate Rawlins's claim that the State had intercepted privileged communications, Rawlins has failed to demonstrate that Hennessey's decision not to file a baseless CrR 8.3(b) motion fell below the minimum objective standard. Nor can Rawlins establish prejudice resulting from this decision. Each of the prosecutors involved in Rawlins's case testified that they never saw the document. Rawlins also makes no argument that the contents of the document were used to further his prosecution or undermine his defense. We reject Rawlins's ineffective assistance of counsel claim.

B. Jury Taint and Right to an Impartial Jury

Rawlins next argues that the trial court violated his right to an impartial jury after a prospective juror made statements during voir dire about her drug-addicted daughter's potential acquaintance with Rawlins. We conclude Juror 48's disclosure was not so prejudicial as to taint the jury pool.

1. Facts relating to jury selection

During voir dire, the court read the charges against Rawlins to the jury, including count nine, possession of methamphetamine, with the intent to deliver, count ten, possession of heroin, and count eleven, possession of methamphetamine. The court then asked if any member of the jury pool knew Rawlins. No one indicated that they did. The court then asked if anyone has "any personal experience similar to the type of case that we're dealing with?" Juror number 48 responded stating "[s]o I have a daughter who has been homeless and on drugs in Bellingham for 10 years . . . I know she's probably had some interaction, and I cannot be impartial. I can't, I can't." (Emphasis added). The court instructed the juror not to go into any detail, and asked, "[are] you . . . telling me that you have some personal experiences or opinions perhaps of this sort of case of the parties involved and that sort of thing. Would that make it impossible for you to sit as a fair juror to everybody concerned?" Juror 48 stated she could not be impartial and "[it] wouldn't be fair to him. I don't want to elaborate because I'll get personal, and that's not right either." Juror 48 reiterated she could not be impartial. The court dismissed this juror for cause without objection from either party.

Defense counsel then moved for a mistrial, arguing that Juror 48 had gestured at Rawlins while making her statements and by doing so, had tainted the jury pool with out-of-court knowledge. The court recognized that Juror 48 had gestured at Rawlins, but refused to impanel a new jury, concluding that the comments did not taint the jury pool. The court stated:

> [I]t's clear that she made [a] statement that her daughter had been on the streets for ten years or so; that she was involved in drugs and kind of pointed her card in her hand and was looking directly towards Mr. Rawlins, the defendant, and made statements to the effect that, and I believe she's had contact with Mr. Rawlins of some sort. That raised antennas in my mind that if there was more said that there was going to be some concerns. Frankly, that's why I stopped her, in essence, and didn't invite any further discussion from her.

The court acknowledged it had released Juror 48 without any follow-up with the rest of the panel, but it decided not to do so to avoid the possibility of tainting the jury by drawing attention to Juror 48's comments. The court also noted that both parties had had the opportunity to ask follow-up questions to the remaining jurors, but chose not to do so. And the court did not believe additional voir dire of the panel or of jurors individually "would have helped the situation in this case." Rawlins did not ask the court to engage in any further questioning of the jury, either in the immediate aftermath of Juror 48's release, or during the argument on Rawlins's motion for mistrial.

After the jury was selected and sworn, the court instructed the jury to follow the court's instructions and consider as evidence only those exhibits and testimony the court admitted during trial. At the conclusion of trial, the court once again instructed the jury it could consider only the testimony of witnesses and exhibits the court admitted during the trial as evidence.

2. Analysis

We must first determine the applicable standard of review. Rawlins initially framed the assignment of error as an erroneous denial of his motion for a mistrial due to an irregularity in jury selection. Generally, the denial of a motion for mistrial will be overturned only when there is a substantial likelihood that prejudice occurred and that it actually affected the jury's verdict. State v. Young, 129 Wn. App. 468, 472-73, 119 P.3d 870 (2005). Because the trial judge is best suited to judge the prejudice of a statement, this court applies the abuse of discretion standard to a decision to deny a mistrial motion. Id.

Rawlins, however, asks us to apply a de novo standard of review because while he raised Juror 48's statements in a motion for mistrial, the trial itself had not actually begun and Rawlins's motion was more analogous to a request to replace a tainted venire with an untainted one. Rawlins argues the constitutional implications of improper disclosures to a jury pool demand a de novo standard of review because the issue raises a mixed question of law and fact.

Both the federal and state constitution guarantee a defendant's right to a fair and impartial jury. State v. Davis, 141 Wn.2d 798, 824, 10 P.3d 977 (2000). And questions of constitutional law are reviewed de novo. State v. Jorgenson, 179 Wn.2d 145, 150, 312 P.3d 960 (2013). Rawlins relies on State v. Strange, 188 Wn. App. 679, 684-85, 354 P.3d 917, review denied, 184 Wn.2d 1016, 360 P.3d 818 (2015), in which Division Two reviewed de novo the question of whether a potential juror's comments that victims of child molestation generally "don't make that accusation . . . for no reason" tainted the venire, thereby denying the defendant

- 16 -

his right to an impartial jury. Id. at 682. But Strange did not move for a mistrial during voir dire or object to this juror's comment and, as a result, the trial court had no opportunity to consider whether any of the prospective jurors' statements might have compromised the petit jury's ability to be impartial. Id. at 686, fn.5.

Here, the court had the opportunity to evaluate whether Juror 48's comment might have compromised the remaining prospective jurors' ability to be impartial. Under such circumstances, there are strong reasons to apply an abuse of discretion standard. First, a trial court has considerable discretion in supervising the voir dire process. Davis, 141 Wn.2d at 825. Second, as the Supreme Court has recognized, a trial judge is in the best position to understand what was said, how it was said, who heard the comment, and what impact, if any, such a statement had on others in the courtroom.

In analogous situations where a testifying witness makes an improper comment, a trial court has wide discretion to cure that type of trial irregularity. State v. Post, 118 Wn.2d 596, 620, 826 P.2d 172 (1992). Rawlins's argument that improper statements by prospective jurors impaired his right to a fair trial appears analogous to an argument that improper statements by witnesses impaired the same constitutional right. We will therefore review this assignment of error under an abuse of discretion standard.

Rawlins next argues that Juror 48's comment should be deemed a structural error, requiring reversal, whether or not he can demonstrate prejudice. A structural error is a special category of constitutional error that affects the framework within which the trial proceeds, rather than an error in the trial process. State v. Wise,

176 Wn.2d 1, 13-14, 288 P.3d 1113 (2012). Structural errors are presumed prejudicial and are not subject to the harmless error analysis. Id. at 14. Where structural error has occurred, a defendant is not required to prove specific prejudice in order to obtain relief. Id.

No Washington court has held that a trial court's refusal to impanel a new venire based on the possibility of jury taint constitutes structural error. It is well-established that the presence of a biased juror is a structural error. State v. Irby, 187 Wn. App. 183, 193, 347 P.3d 1103 (2015); State v. Winborne, 4 Wn. App. 2d 147, 171, 420 P.3d 707 (2018). In Young, 129 Wn. App. at 479, this court applied a harmless error standard to evaluate whether inadvertently informing the jury of the details of a defendant's prior felony conviction tainted the jury and warranted a new trial. We see no reason not to apply the constitutional harmless error standard to Rawlins's jury taint claim.

Rawlins relies on Mach v. Stewart, 137 F.3d 630, 633 (9th Cir. 1997), to support his structural error argument. In that case, a prospective juror said she was an expert in child psychology and had never seen a case in which a child had lied about being sexually assaulted. In evaluating the denial of a motion for a mistrial, the Ninth Circuit stated that the comments "arguably" rose to the level of structural error. Id. But it declined to determine whether the structural error or harmless error standard applied because it concluded that even under a harmless error analysis, the potential juror's statements required reversal. Id. at 634. We therefore decline to follow the Ninth Circuit's equivocal application of the structural error doctrine here.

Rawlins next argues Juror 48's comments were prejudicial because they suggested she had out-of-court knowledge of Rawlins's involvement with drugs and several of the charges against him were drug-related. He contends the statements were so prejudicial as to warrant a new trial. We disagree.

Washington courts consider three factors when deciding whether a trial irregularity warrants a new trial: (1) the seriousness of the irregularity, (2) whether the statement was cumulative of properly admitted evidence, and (3) whether the irregularity could be cured by an instruction. Post, 118 Wn.2d at 620.

Rawlins relies on Mach to support his contention that Juror 48's comments warrant a reversal of his conviction. Mach, however, is distinguishable. In that case, Mach was convicted in Arizona state court of child sexual molestation. Id. at 631. During voir dire, a potential juror stated that she had expertise in the field of child psychology and that, in her experience, a child's allegations of sexual abuse are always true. Id. at 632-33. The trial judge questioned the juror at length about her experiences and the juror made similar statements at least three times. Id. at 632. The court denied Mach's motion for a mistrial but dismissed the juror for cause. Id.

In a subsequent habeas corpus proceeding, the Ninth Circuit reversed Mach's conviction, reasoning that, "[g]iven the nature of [the] statements, the certainty with which they were delivered, the years of experience that led to them, and the number of times that they were repeated," the jury had been tainted so as to violate Mach's right to an impartial jury. Id. at 633. It further stated that, "[a]t a minimum, when Mach moved for a mistrial, the court should have conducted

- 19 -

further voir dire to determine whether the panel had in fact been infected by [the juror's] expert-like statements." Id.

In this case, however, Juror 48 did not profess to be an expert in the field of drug trafficking or drug dealers in Bellingham. Juror 48 did state that her daughter, a drug addict, "probably had some interaction" with Rawlins, but she did not indicate that she knew Rawlins and made no statement that she knew Rawlins had in fact sold drugs to her daughter. Nor did she repeat her statements on multiple occasions. Finally, Rawlins had the opportunity to ask follow-up questions of the remaining panel members or to ask the court to do so, but chose neither path. And the trial court justified its rationale for not engaging in any further questioning about the juror's statement by citing the fact that inquiring further would have only served to underscore the seriousness of Juror 48's comments, a concern that was echoed by defense counsel.

This case is more analogous to Strange. In that child molestation case, a potential juror stated during voir dire that "it has just been my experience people don't make that accusation, you know, for no reason. Like, I feel like if an accusation was made there had to be something that had happened." Strange, 188 Wn. App at 682. The court held that this statement did not taint the jury, distinguishing from Mach on the basis that "(1) no prospective juror professed any expertise about these cases, and (2) none of the prospective jurors in this case stated multiple times that, in their experience, children who are sexually abused never lie about their abuse." Id. at 684-86. The same is true here.

This case is also factually distinguishable from Young where this court concluded that the trial court's inadvertent disclosure of the details of the defendant's prior assault conviction to the venire created prejudice so substantial that it required a new trial. Young, 129 Wn. App. at 473. The parties in Young had stipulated to the defendant's prior felony conviction, but agreed not to disclose the nature of the offense. Id. at 472. The trial court, however, read to the jury directly from the charging information and thus inadvertently disclosed that Young had been previously convicted of second degree assault. Id.

The trial court denied Young's motion for mistrial, explaining that it was not aware of the details of the parties' stipulation. On appeal, this court concluded that the court erred in denying the motion, reasoning that the disclosure was "inherently prejudicial" and the trial court's explanation for the denial of the motion for a mistrial did not address this prejudice. Id. at 475.

Unlike in Young, Juror 48's disclosure regarding her daughter was not inherently prejudicial for two reasons. First, the statement did not come from the judge presiding over the trial. Second, the statement was not a statement of fact about Rawlins but a possibility that her daughter would have had contact with Rawlins if the allegations against him were true. Juror 48's statements were general in nature and could have been interpreted as speculation and nothing more. Unlike Mach or Young, Juror 48's statements were made only once and did not reveal any actual out-of-court knowledge or experience with the defendant or personal knowledge of the allegations against him. Instead, as in Strange, the comments revealed nothing more than a potential juror's bias stemming from her

own personal experiences. Under these circumstances, the trial court did not abuse its discretion in concluding the comment was not serious enough to warrant dismissing the entire jury pool.

Rawlins also contends that Juror 48's statement was "akin to forbidden propensity evidence because it revealed Rawlins was involved in past drug activity." Even if true, however, any comments Juror 48 made suggesting Rawlins was involved in drug activity were merely cumulative when observed in the context of the ample evidence linking Rawlins to drug crimes. Police testified that, in Rawlins's trailer and the car used in the drive-by shooting, they found a ledger of drug transactions, multiple digital scales, and several "baggies" containing pills, methamphetamine, and heroine. In the face of this overwhelming evidence of drug activity, Juror 48's statement was cumulative at most.

Finally, although the trial court did not instruct the jury pool to disregard Juror 48's comment, it explained, in denying Rawlins' motion, that it had twice instructed the jury that it was to presume the defendant innocent and that the only evidence it was to consider is "what you hear in the courtroom from the witnesses and the exhibits that might be presented at court." And at the conclusion of trial, the trial court instructed the jury once again that the jury's decision "must be made solely upon the evidence presented during these proceedings."

Rawlins contends that Juror 48's comments were so prejudicial as to be "impervious to cure." Again, Young and Strange are instructive. In Young, this court found the trial court took no curative action to ameliorate the prejudice from disclosing details of a defendant's prior felony assault conviction. Young, 129 Wn.

- 22 -

App. at 477. In <u>Strange</u>, the court deemed the juror's comments insufficiently prejudicial and it did not even address whether a curative instruction was given or should have been given. But neither case suggests that a juror's comments evidencing bias against a defendant cannot be remedied through instructions from the court.

The trial court did not abuse its discretion in denying Rawlins's motion for a mistrial.

C. <u>Admission of Victim's Medical Record</u>

Rawlins next argues that the trial court erred in admitting a medical record relating to one of his victims, James Flores, under the business records exception to the rule against hearsay and that this error requires reversal of his hit and run conviction. He specifically contends that the State did not lay sufficient foundation for three of the elements of the business records exception. We reject this argument on the grounds that Rawlins waived the issue when he did not challenge the admissibility of this record under the business records exception at trial.

The business records exception to the rule against hearsay provides that:

[a] record of an act, condition or event, shall in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

RCW 5.45.020.

Evidence thus falls under the business records exception when (1) the evidence was in the form of a record; (2) the record was of an act, condition or

event; (3) the record was made in the regular course of business; (4) it was made at or near the time of the act, condition or event; and (5) the court was satisfied that the sources of information, method and time of preparation were such as to justify its admission. State v. Kreck, 86 Wn.2d 112, 119, 542 P.2d 782 (1975). Rawlins argues that the State failed to lay the foundation of prongs (2), (4), and (5).

At trial, Rawlins first objected to the record on the basis that it contained a narration of events by a non-testifying witness. In response, the State redacted a significant number of Flores's statements and offered this redacted version. Rawlins then objected to the medical record's reliability and its relevance. The trial court overruled these objections.

For the first time on appeal, Rawlins argues the State failed to lay an adequate foundation for the court to admit the medical record under the business records exception. He specifically argues the State failed to present evidence of the method of the record's preparation, or evidence that the record documented an act, condition or event, or evidence that the record was made at or near the time of the documented act, condition or event. Rawlins raised none of these objections below.

RAP 2.5(a) states that "[t]he appellate court may refuse to review any claim of error which was not raised in the trial court." The purpose underlying issue preservation rules is to encourage the efficient use of judicial resources by ensuring that the trial court has the opportunity to correct any errors, thereby

avoiding unnecessary appeals. State v. Robinson, 171 Wn.2d 292, 304-05, 253 P.3d 84 (2011).

Here, the trial court did not have the opportunity to correct the errors Rawlins now alleges on appeal. The State called Erin Dang, Health Information Management Training Manager at Peace Health, to lay the foundation. She testified that it is her job to keep medical records at the hospital where Flores was taken after the shooting, that the hospital keeps accurate records, and that Flores's record was made in the regular course of business. Rawlins did not raise an objection to the sufficiency of this foundational testimony.

After Dang testified, defense counsel stated he had no questions for her. If Rawlins had any concerns about the foundation the State made to the record's authenticity, he could have questioned Dang when she was on the witness stand and provided the court with the opportunity to correct the errors he now claims. He did not do so and therefore the issue has been waived.

D. Jury Unanimity on Count Four's Unlawful Possession of Firearm

Rawlins argues for the first time on appeal that his right to jury unanimity was violated when the State failed to provide a unanimity instruction or clearly elect the specific act on which it based the charge of unlawful possession of the firearm in count four. We agree.

1. Factual background on firearm possession charges

Counts four, six and seven of the amended information each charged Rawlins with unlawful possession of a firearm, all occurring on or about March 19, 2018. In count four, the State had to prove that Rawlins knowingly had a

"Springfield XD handgun" in his possession or control. In count six, the State had to prove he knowingly possessed or controlled a "Savage brand .308 rifle." And in count seven, the State had to prove Rawlins knowingly possessed an "Eastern Arms Company .410 shotgun." The jury convicted him of all three charges.

2.      Analysis

Rawlins contends it was unclear from the record whether count four, possession of the Springfield firearm, was based on the shooting incident in Burlington, Skagit County, on March 19, 2018, or based on the discovery of the gun in Rawlins's travel trailer the following day in Whatcom County. The State first counters that the invited error doctrine precludes Rawlins from raising this issue on appeal because he did not propose a unanimity instruction at trial. We reject this argument.

Under the invited error doctrine, a defendant may not challenge jury instructions, which he proposed, for the first time on appeal. State v. Henderson, 114 Wn.2d 867, 868, 792 P.2d 514 (1990). The doctrine does not preclude defendants from challenging jury instructions the defendant did not propose. State v. Thomas, 150 Wn.2d 821, 844, 83 P.3d 970 (2004).

The State relies on State v. Carson, 179 Wn. App. 961, 973, 320 P.3d 185 (2014), in which Division Two stated that "[the invited error] doctrine applies to alleged failures to provide a Petrich unanimity jury instruction," citing State v. Corbett, 158 Wn. App. 576, 592, 242 P.3d 52 (2010). However, in Carson, the defendant actually objected to the State's proposed unanimity instruction during trial, thus clearly inviting the error when the trial court declined to include the

instruction based on "defense counsel's strong, repeated objections." Carson, 179 Wn. App. at 969, 973-74. And in Corbett, the defendant proposed the jury instructions he sought to challenge on appeal, thus also clearly falling within the invited error doctrine. Corbett, 158 Wn. App. at 591. The State offers no authority for its argument that failure to offer a unanimity instruction alone constitutes invited error. Here, Rawlins did not provide the instruction he now challenges as inadequate. We therefore conclude that the invited error doctrine does not preclude Rawlins from raising the issue on appeal.

In Washington, a defendant may be convicted only when a unanimous jury concludes that the criminal act charged in the information has been committed. State v. Stephens, 93 Wn.2d 186, 190, 607 P.2d 304 (1980).

> When the evidence indicates that several distinct criminal acts have been committed, but the defendant is charged with only one count of criminal conduct, jury unanimity must be protected. . . . The State may, in its discretion, elect the act upon which it will rely for conviction. Alternatively, if the jury is instructed that all 12 jurors must agree that the same underlying criminal act has been proved beyond a reasonable doubt, a unanimous verdict on one criminal act will be assured. When the State chooses not to elect, this jury instruction must be given to ensure the jury's understanding of the unanimity requirement.

State v. Petrich, 101 Wn.2d 566, 572, 683 P.2d 173 (1984). Courts consider several factors when determining whether the State elected a specific act, including the charging document, evidence, instructions, and closing argument. State v. Kier, 164 Wn.2d 798, 813-14, 194 P.3d 212 (2008).

The State argues it elected to base count four on Rawlins's possession of the Springfield firearm on the night of the shooting in Burlington on March 19. The record does not support this argument.

The State relies on the prosecutor's closing statements to demonstrate a clear election, primarily focusing on the statement, "[t]he issues that occurred here in Skagit County . . . are the drive-by shootings, the two assaults in the 1st Degree, and unlawful possession of a firearm because that Springfield XD is the firearm that was possessed and used here in Skagit."[2] But the prosecutor's statement that the gun was used in Skagit County was shortly followed by the assertion that "Rawlins was found to be in possession of [the] firearm that was used down here in Skagit County, up in Whatcom County. That firearm was located with his documentation, in his safe, [in] his trailer." The prosecutor never clearly informed the jury that conviction of count four must be based solely on the act of possessing the gun while in Skagit County on March 19.

Moreover, our Supreme Court has held that, when reviewing the question of whether the State elected a single criminal act, appellate courts "cannot consider the closing statement in isolation." Kier, 164 Wn.2d at 813. In Kier, the defendant challenged his conviction of robbery and assault stemming from an incident involving two victims, arguing that the State failed to make a clear election of which crime applied to which victim. Id. at 811. As in this case, the State argued that it had made a clear election during closing statements, identifying one victim for the crime of robbery and one for the crime of assault. Id. at 813. The Supreme Court disagreed, concluding that the evidence "identified both Hudson and Ellison as victims of the robbery, including Ellison's own testimony that Kier pointed the gun

---

[2] Although not noted by the State, the third amended information alleged under count four that the crime occurred in Skagit County, where Burlington is located, and not Whatcom County, where Rawlins resided. But the "to convict" instruction for count four did not require the State to prove that the possession occurred in Skagit County.

- 28 -

at him in the course of stealing the car. Furthermore, the jury instructions did not specify that Hudson alone was to be considered a victim of the robbery." Id. The State relies on State v. Thompson, 169 Wn. App. 436, 474, 290 P.3d 996 (2012), to support its argument that the prosecutor's verbal statement in closing was a sufficient election of a criminal act. However, consistent with Kier, the jury instructions in Thompson specified the elected criminal act by clearly identifying the intended victim. Id. at 474-75.

This case is analogous to Kier and distinguishable from Thompson. In this case, based on the totality of the evidence and argument presented to the jury, the State failed to make a clear election. Although the State's amended information alleged that the unlawful possession charged in count four occurred in Skagit County, this allegation was not clearly conveyed to the jury.

The jury was instructed in Instruction 25 that "Possession means having a firearm in one's custody or control. It may be either actual or constructive." Police officers testified that when they searched Rawlins's travel trailer on March 20, they found a Springfield XD 9 mm subcompact handgun sitting on top of paperwork inside a safe. The State also offered testimony that the casings collected on March 19 from the scene of the shooting came from the Springfield XD that the police recovered on March 20. The jury thus heard evidence that Rawlins had actual or constructive control of the Springfield XD both in Burlington on March 19 and in Whatcom County on March 20. We cannot conclude from the evidence, the jury instructions, and the State's closing argument that it clearly elected to base count four on possession of the Springfield XD handgun during the March 19 shooting in

Burlington, rather than at the time his travel trailer was searched on March 20 in Whatcom County.

Because the State did not clearly elect the criminal act on which it was relying for possession of the Springfield XD handgun, a Petrich instruction was necessary. Failure to give a Petrich instruction, when required, is reversible error unless the error is harmless beyond a reasonable doubt. Camarillo, 115 Wn.2d at 64. In multiple acts cases, the standard of review for harmless error is whether a "rational trier of fact could find that each incident was proved beyond a reasonable doubt." Id. at 65 (quoting State v. Gitchel, 41 Wn. App. 820, 823, 706 P.2d 1091 (1985)). The State argues the error was harmless because there was ample evidence that Rawlins had dominion and control over the Springfield XD handgun both in Skagit County on March 19 and in Whatcom County on March 20. We agree.

Justice Connell testified that he, James Flores, and two other young men, met Rawlins at the Cascade Mall parking lot in Burlington to purchase drugs. Flores got into Rawlins's Dodge Caravan to talk to Rawlins. Flores returned and the group started to leave. As they did so, Rawlins rammed their Dodge Caliber from behind and then chased them into a residential neighborhood, when someone from inside Rawlins's van fired at least two shots at the Caliber. The bullets and shell casings recovered from the scene of the shooting matched the weapon subsequently found in Rawlins's safe.

This evidence is sufficient to establish that Rawlins or an accomplice shot the Springfield XD handgun at Connell and Flores. One can be in constructive

- 30 -

possession of a firearm jointly with another person. State v. Turner, 103 Wn. App. 515, 521, 13 P.3d 234 (2000). Although mere proximity to a firearm or knowledge of its presence, without more, is insufficient to show dominion and control, both may be considered in evaluating whether the defendant had the ability to reduce the weapon to actual possession. State v. Chouinard, 169 Wn. App. 895, 899, 282 P.3d 117 (2012).

Courts have found sufficient evidence of constructive possession, and dominion and control, in cases in which the defendant was the owner of the vehicle where the firearm was found. Id. at 900. Indeed, where there is control of a vehicle, knowledge of a firearm inside it, an extended duration of time when the firearm is in the vehicle, and the defendant's failure to reject the presence of the firearm in the vehicle, there is sufficient evidence to find constructive possession. Turner, 103 Wn. App. at 524.

Here, there is direct evidence that Rawlins owned the Dodge Caravan involved in the shooting on March 19 and that Rawlins was driving that vehicle at the time someone shot at Flores and Connell. There is direct forensic evidence that the gun fired from the van is the Springfield XD handgun found in Rawlins's safe. There is circumstantial evidence that Rawlins knew that the handgun was in his van and that it remained in his van from the time of the shooting until Rawlins drove to his home that night. There is also circumstantial evidence Rawlins knew someone took the gun out of his van and placed in into his safe inside his travel trailer. Thus, the evidence is sufficient to prove knowledge of the gun's presence in Rawlins's car and home, his proximity to that firearm when it was shot from

inside his van, an extended duration of time that the firearm would have been in his van while in transit home, and no evidence Rawlins took any steps to reject the presence of the firearm in his vehicle.

Although the trial court erred in failing to provide a Petrich instruction as to count four, we conclude the error was harmless.

E. Same Criminal Conduct

Rawlins next argues that the trial court erred in calculating his offender score because the three convictions for unlawful possession of a firearm, counts four, six, and seven, constitute the same criminal conduct. The State conceded at trial that counts six and seven, possession of the rifle and shotgun found in the Whatcom County trailer on March 20, constituted the same criminal conduct, but argued that count four relating to the possession of the Springfield handgun did not. We conclude the trial court did not abuse its discretion in rejecting Rawlins's same criminal conduct argument.

RCW 9.94A.589(1)(a) provides that, for the purposes of determining a sentencing range, charged offenses encompassing the same criminal conduct shall be counted as one crime. "Same criminal conduct" is defined as "two or more crimes that require the same criminal intent, are committed at the same time and place, and involve the same victim." RCW 9.94A.589(1)(a). This court reviews determinations of same criminal conduct for abuse of discretion or misapplication of the law. State v. Graciano, 176 Wn.2d 531, 535-36, 295 P.3d 219 (2013). Under this standard, when the record supports only one conclusion on whether crimes constitute the "same criminal conduct," a sentencing court abuses its discretion in

arriving at a contrary result. Id. But where the record adequately supports either conclusion, the matter lies within the court's discretion. Id. The defendant bears the burden of proving same criminal conduct. Id. at 539. Rawlins has failed to meet that burden here.

In general, possessing multiple firearms at the same time and place constitutes the same criminal conduct. State v. Stockmyer, 136 Wn. App. 212, 219, 148 P.3d 1077 (2006); State v. Simonson, 91 Wn. App. 874, 885-86, 960 P.2d 955 (1998). In Simonson, we held that if the guns are in the same room of a house and readily available for use, possession of these weapons constitutes the same criminal conduct. In Stockmyer, however, we held that possessing multiple firearms in different rooms of a residence did not constitute the same criminal conduct as a matter of law. Stockmyer, 136 Wn. App. at 219. In that case, we concluded that because law enforcement found guns in different rooms in the defendant's house, the guns were in different places for purposes of the same criminal conduct test under RCW 9.94A.589(1)(a). Id. at 220.

In this case, the police found the Springfield XD handgun, the rifle, and the shotgun all inside Rawlins's 27-foot travel trailer at the same time—when they searched his home on March 20. But the court concluded, after reviewing Stockmyer, that possession of the Springfield XD was not the same criminal conduct as the possession of the rifle and shotgun because "the State pled it [as occurring in Skagit County] and the evidence presented to the jury [showed] the gun was tied to the Burlington site of the shooting through the shells . . . connected to that gun." The court found that possession of this handgun, charged in count

four, was not the same criminal conduct as the possession of the shotgun and rifle, charged in counts six and seven.

The trial court correctly noted that we narrowly construe the "same place" requirement in evaluating same criminal conduct. Stockmyer, 136 Wn. App. at 219. The trial court also correctly looked to the specific facts of the case before it to resolve the issue of whether the possession of multiple guns constituted the same criminal conduct. We conclude it did not misapply the law in reaching its same criminal conduct decision. We also conclude the trial court had a tenable factual basis for finding that Rawlins possessed this handgun at the different time (March 19 rather than March 20) and in a different location (Burlington rather than inside his travel trailer) than the shotgun and rifle. The evidence supports that finding. The trial court did not abuse its discretion.

F. Sufficiency of the Evidence

Rawlins argues in his statement of additional grounds that the State did not prove that he was the individual who committed the charged offenses of drive by shooting, assault, and hit and run with injury, citing the unreliability of Connell's eyewitness testimony. We reject Rawlins's sufficiency challenge.

For the drive-by shooting, the jury had to find that Rawlins "or an accomplice" recklessly discharged a firearm from a motor vehicle. To prove first degree assault, the State had to prove that Rawlins "or an accomplice" committed an assault with a firearm. The State did not have to prove that Rawlins actually committed these crimes, only that he knowingly acted to promote or facilitate the commission of the crimes. RCW 9A.08.020(3)(a).

The evidence was more than sufficient to prove Rawlins's participation in these crimes as an accomplice. Even without Connell's testimony identifying Rawlins as the driver of the Dodge Caravan, the State presented ample evidence tying Rawlins to these offenses. Rawlins's Dodge Caravan matched the descriptions of the vehicle that chased Connell and Flores. That vehicle had damage consistent with the collision described by Connell. Connell and other eyewitnesses testified someone inside Rawlins's van shot at Connell's fleeing car. Law enforcement matched the bullet pulled from the Dodge Caliber to the Springfield XD handgun found in the trailer sitting on top of documents addressed to Rawlins.

To convict Rawlins of hit and run, the jury had to find Rawlins was driving a vehicle, that the vehicle was involved in an accident resulting in injury to a person, that Rawlins knew that he had been involved in an accident, and Rawlins failed to remain at the scene of the accident, report it to the police, and render aid to injured persons. Connell testified Rawlins was driving his car that night and he lost control of his Dodge Caliber, causing it to roll and injuring Flores. Surveillance video footage depicted Rawlins and another individual pulling up to the car crash, getting out to examine the car, and then returning to the van and leaving the site of the accident. Flores's medical records established the injury he sustained in the accident. This evidence provided a sufficient basis for any reasonable juror to conclude that Rawlins committed the crime of hit and run.

G. Trial court's authority to correct legal errors in the Judgment and Sentence

Finally, Rawlins challenges the trial court's order amending the judgment and sentence to include a 60-month firearm enhancement, instead of the 30-month exceptional sentence the court originally imposed. He argues that the trial court exceeded the scope of this court's remand order and that the only method by which the State could have challenged a legal error in the exceptional sentence was by way of a cross-appeal. Rawlins also maintains the doctrine of judicial estoppel bars the State from seeking to correct a sentence it explicitly agreed to recommend.

First, we conclude Rawlins's challenge to the scope of our remand order is moot. We permitted the trial court to enter the amended judgment and sentence under RAP 7.2(e) while allowing Rawlins to raise arguments regarding the trial court's authority to correct his judgment and sentence.

Second, the State is not judicially estopped from asking the court to correct a sentence that is not authorized by law. Under the doctrine of judicial estoppel, a party is precluded from asserting one position in a court proceeding and later seeking an advantage by taking a clearly inconsistent position. Serpanok Const. Inc. v. Point Ruston, 19 Wn. App. 2d 237, 256, 495 P.3d 271 (2021). We consider three factors to determine whether judicial estoppel applies: (1) whether the party's later position is clearly inconsistent with its earlier position; (2) whether accepting the new position would create the perception that a court was misled; and (3) whether a party would gain an unfair advantage from the change. State v. Wilkins, 200 Wn. App. 794, 803, 403 P.3d 890 (2017).

- 36 -

The State concedes that its position on remand was inconsistent with its position at the original sentencing hearing. However, the second factor weighs in favor of the State, as the inconsistent positions do not create the perception that the trial court was misled. Rawlins's original sentence contained a clear legal error. RCW 9.94A.533(3)(a) imposes a 60-month firearm enhancement for offenders who commit a class A felony while armed with a firearm. These firearm enhancements "are mandatory, shall be served in total confinement, and shall run consecutively to all other sentencing provisions." RCW 9.94A.533(3)(e). It is obvious from the record that the prosecuting attorney and the trial court were unaware of State v. Brown, 139 Wn.2d 20, 29, 983 P.2d 608 (1999), overruled in part on other grounds by State v. Houston-Sconiers, 188 Wn.2d 1, 391 P.3d 409 (2017), in which the Supreme Court held that the trial court has no discretion to deviate downward from the mandatory 60-month firearm enhancement provision when sentencing adult offenders. There is no suggestion that the prosecutor recommended a sentence to the trial court knowing that it was unlawful.

We also fail to see any "unfair advantage" the State gained by this legal error. Rawlins received the benefit of a sentence that his counsel, as well as the State, should have known was not permissible under the Sentencing Reform Act. The fact that the State agreed to an exceptional sentence at the original sentencing hearing did not preclude Rawlins from making other arguments for a lawful mitigated sentence. He specifically asked the court for a sentence below the standard range under RCW 9.94A.535(1)(c), (d), and (f). The court stated, at sentencing, that "I don't believe . . . there's any mitigating factors that would warrant

- 37 -

going along the standard range outline based upon the offender scores [and] the charges involved here."  At resentencing, Rawlins again sought an exceptional sentence, arguing that even if the court could not legally impose 30-month firearm enhancements, the court should adjust the sentence in a legal manner by departing downward on the standard range to achieve the same result.  The court refused this request.  Although Rawlins argued he was entitled to the "benefit of the bargain," the sentence was not a part of any negotiated plea.  While the State made a recommendation and characterized it as an agreed recommendation, the trial court was free to reject the agreement in light of Brown.

Rawlins argues that he was subject to an unfair detriment because he advanced his appeal with the understanding that he would not be put in the position of receiving a worse sentence on the firearm enhancements by doing so.  But Rawlins actually received a benefit from the resentencing, even with the 60-month firearm enhancements.  In addition to its request to modify the duration of the firearm enhancements, the State notified Rawlins and the court that his offender score for the drive-by shooting was undercounted by one point but deletion of the Blake convictions offset the score, so the corrected offender score did not change—it remained a "10."  The State also discovered that the offender scores on counts four through eight needed to be reduced by two points, one point to reflect the vacated Blake convictions and one point representing an over-count in the original score, resulting in a reduced offender score of "8" for all of these convictions.  The reduced offender scores resulted in a significant reduction in the

- 38 -

standard ranges. For these reasons, the State is not judicially estopped from moving to correct Rawlins's sentence.

Rawlins's final argument is that the State may not seek to correct a legal error in a judgment and sentence unless it does so by way of an appeal. We also reject this argument. A trial court may only impose a sentence authorized by statute. In re the Postsentence Review of Leach, 161 Wn.2d 180, 184, 163 P.3d 782 (2007). CrR 7.8(b)(4) provides that a trial court may grant relief if the judgment is void. In State v. Hardesty, 129 Wn.2d 303, 315, 915 P.2d 1080 (1996), our Supreme Court stated that "[a] court has jurisdiction to amend a judgment to correct an erroneous sentence, where justice requires, under CrR 7.8."

State v. Smissaert, 103 Wn.2d 636, 694 P.2d 654 (1985) is instructive. There, the trial court sentenced a defendant to a maximum term of 20 years in prison for the crime of murder in the first degree, but the court was statutorily required to impose a life sentence. Id. at 638. Two years later, the Board of Prison Terms and Parole notified the trial court of its mistake. The court corrected the mistake by amending the judgment and sentence to impose life imprisonment. Id. Our Supreme Court determined that the trial court had to amend the judgment and sentence to correct its legal error. Id. at 640, 644. Smissaert supports a conclusion that the trial court has the authority under CrR 7.8(4) to correct an invalid sentence, even though it resulted in the imposition of a more onerous judgment on the defendant, as long as the defendant is put in the same position he would have been in had the correct sentence been imposed originally. Id. at 640.

Rawlins is now in the same position he would have been in had the correct sentence been imposed. Rawlins had the opportunity to request a valid exceptional sentence at the original sentencing hearing and the court refused. We see no detriment caused by the State's motion to correct the legal error in Rawlins's sentence.

Affirmed.

_Andrus, A.C.J._

WE CONCUR:

_Brenner, J_        _Dwyer, J._